[No. A129646. First Dist., Div. One. Aug. 26, 2011.]

BEVERLY SCHENCK, Plaintiff and Appellant, v.
COUNTY OF SONOMA, Defendant and Respondent;
LIQUID INVESTMENTS, INC., et al., Real Parties in Interest and
Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

___

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV. and V. of the Discussion.

COUNSEL

William D. Kopper for Plaintiff and Appellant.

Bruce D. Goldstein, County Counsel, and Sue A. Gallagher, Deputy County Counsel, for Defendant and Respondent.

Clement, Fitzpatrick & Kenworthy, Clayton E. Clement and Anthony Cohen for Real Parties in Interest and Respondents.

OPINION

**DONDERO, J.**—This is an appeal from a judgment in an action challenging the approval of a project for development of a beverage distribution facility on grounds that the County of Sonoma failed to comply with the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.)[1] before issuing a mitigated negative declaration. Plaintiff Beverly Schenck

[1] All further statutory references are to the Public Resources Code, unless otherwise specified; all references to "Guidelines" are to the "Guidelines for Implementation of the

claims proper notice of the administrative proceedings was not given to public agencies and the findings of no significant impact on the environment are contrary to the evidence. We conclude that a single error in the notice procedure was not prejudicial, and the substantial evidence does not support a fair argument that a proposed project may have a significant effect on the environment. We therefore affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 19, 2006, the real parties in interest, Liquid Investments, Inc., and Mesa Beverage Company, Inc. (Mesa), filed an application with the permit and resource management department (the Department) of defendant County of Sonoma for approval to develop and construct a 155,149-square-foot warehouse and beverage distribution facility, along with an associated office, maintenance building, and paved parking area, on a vacant 12.5-acre parcel located north of Santa Rosa near Highway 101 on the east side of North Laughlin Road, adjacent to Mark West Creek.[2] The proposed project was intended to replace an existing facility operated by Mesa nearby at 205 Concourse Boulevard. As proposed by Mesa, the new facility would operate continuously from Sunday to Friday evenings, employing a total of 116 employees, including office and warehouse workers, truckdrivers and loaders. The proposed development project lies within the existing airport industrial area of the County, which is zoned MP and designated for industrial use, so only design review approval from the County was required prior to issuance of building permits.

Following an initial design study and evaluation by the Department staff of traffic impacts, environmental noise, biological impacts, cultural resources and hydrology, along with a preliminary design review hearing on October 18, 2006, design changes were recommended. A traffic study completed by an independent consulting firm, TJKM Transportation Consultants (TJKM), in November of 2006, identified five intersections that would be impacted by proposed development, three of them on Airport Boulevard, and recommended improvements to reduce future cumulative traffic impacts to less-than-significant levels. Mesa incorporated the recommended changes into the site plan.

The Department staff thereafter prepared an initial mitigated negative declaration which concluded that with incorporated mitigation measures

California Environmental Quality Act" (Cal. Code Regs., tit. 14, § 15000 et seq.), the regulations promulgated to clarify the statutory law of CEQA.

[2] We will refer to the real parties in interest collectively as Mesa; we will refer to the County of Sonoma as the County.

"there will be no significant environmental impacts resulting from this project." A public hearing before the design review committee (the Committee) was scheduled for June 6, 2007. Notice of the hearing was sent to specified federal, state and local government agencies, including the North Coastal Regional Water Quality Control Board (Regional Water Board) and the Bay Area Air Quality Management District.

At the public hearing local residents expressed concerns with adverse impacts of the project on traffic, noise, lighting, aesthetics, and biological resources. Mesa subsequently provided further information to the Department staff and made minor modifications to the project design. A revised mitigated negative declaration was then prepared and a final public design review hearing was held on September 19, 2007. The Committee voted to approve the modified design with additional conditions related to landscaping, lighting, road improvements, driveway restrictions, storm water and adjacent wetlands protection, and construction of sound walls.

The decision of the Committee was appealed to the planning commission. After a public hearing, the planning commission denied the appeal and adopted resolution No. 08-004, which approved the mitigated negative declaration as completed in compliance with CEQA, and granted the design review permit.

Review of the project application then proceeded by way of an appeal by plaintiff Beverly Schenck to the County Board of Supervisors (the Board) on February 15, 2008. Schenck requested that the County require Mesa to provide an environmental impact report (EIR), with analysis of traffic, noise and biological impacts, as well as an assessment of project alternatives.

In March of 2008, Mesa enlisted TJKM to complete and submit an updated traffic study for the project to "estimate daily traffic for the proposed Mesa Beverage facility" on North Laughlin Road. The TJKM traffic study assumed the volume of daily product generated at the new "North Laughlin facility" would be the same as that of the existing "Concourse Boulevard facility," so the daily employee traffic and truck operations would also be essentially identical. Traffic counts for the two driveways at the Concourse Boulevard facility were observed and collected, and compared to the trip production rates estimated for the project in the November 2006 traffic impact study. The observed trip totals were significantly lower—approximately 18 percent—than the estimates stated in the prior TJKM study.

A third revised mitigated negative declaration was issued by the County on March 24, 2008, which incorporated the updated statement of traffic impacts. A review of the most recent TJKM study by the County Department of

Transportation and Public Works determined that traffic impacts would "be less than previously reported at the five impacted intersections," and would be reduced to less-than-significant levels with the mitigation fees to be paid by the developer upon issuance of building permits. The County set a public hearing before the Board to consider plaintiff's appeal and the revised mitigated negative declaration.

At the hearing before the Board on May 13, 2008, plaintiff offered evidence of reviews of the assessments of impacts on biological resources, noise, and traffic congestion in the revised mitigated negative declaration. The hearing was continued for the limited purpose of receiving written responses from Mesa to the information presented by plaintiff. In June and July of 2008, TJKM then offered additional studies and corrected analyses in response to plaintiff's review of traffic impacts. The TJKM studies acknowledged that while traffic impacts due to the new, relocated facility would shift at some of the five affected intersections, the ultimate result would not be a significant environmental impact.

A fourth mitigated negative declaration, issued on July 23, 2008, took the updated TJKM traffic studies into consideration. Before a further hearing, Mesa provided additional information at the request of the Board on biological, greenhouse gas emissions, noise and traffic impacts, and mitigation measures. The fifth mitigated negative declaration, with minor revisions from the previous version and specification of additional minor mitigation measures, was then released and circulated on September 2, 2008.

Following the presentation of evidence at a public hearing on September 23, 2008, the Board adopted resolution No. 08-0904, which denied plaintiff's appeal, adopted the fifth mitigated negative declaration and mitigation monitoring program, and approved the design review for the project subject to the stated conditions of approval. The resolution articulated the Board's finding "that the Proposed Project will not result in potentially significant adverse environmental impacts that cannot be avoided by the performance of the specified mitigation measures."

Plaintiff challenged the County's compliance with CEQA and approval of the project by way of a petition for peremptory writ of mandate and injunctive relief filed in the trial court on November 18, 2008. After denial of plaintiff's request for a preliminary injunction and the presentation of argument on the petition for writ of mandate, on December 29, 2009, the trial court filed an order that found the County failed to furnish proper notice of the Board's intent to adopt the mitigated negative declaration to the Bay Area Air Quality Management District (the BAAQMD or the District). The court further found that the County failed to "show lack of prejudice" associated

with the defective notice, despite the incorporation of the District's "standards" and "thresholds of significance" into the mitigated negative declaration.[3] No other violations of the CEQA requirements were found by the court. A writ of mandate was granted to require Mesa to provide adequate notice to the BAAQMD, with the "results of such notice" to determine the "further course of action" needed to "cure the defects and ensure proper CEQA review of this project." The court retained jurisdiction over the matter to ultimately determine the issue of the County's compliance with the notice provisions of CEQA.

On January 11, 2010, the County sent the BAAQMD notice of intent to adopt a mitigated negative declaration, and a request for "comments on both the project and the proposed mitigated negative declaration" within 30 days. Upon review of the notice and the attached mitigated negative declaration, the BAAQMD commented: "The air quality analysis provided in the MND/Initial Study appears to meet appropriate standards for impact assessment. The Project's estimated operational criteria emissions are below the Air District's existing thresholds of significance. The District supports the adopted mitigation measures as a means to implement all feasible measures to reduce the Project's emissions."

Plaintiff filed an appeal from the trial court's order, which was dismissed by this court. Thereafter, the County filed a "Certificate of Compliance" with the trial court's order on April 29, 2010, which informed the court "of the County's timely and complete compliance" with the order to provide proper notice to the BAAQMD, and requested dismissal of the petition for writ of mandate with prejudice. The parties subsequently filed a stipulation that the County's Certificate of Compliance served as a return to the writ of mandate (Code Civ. Proc., § 1108), and to entry of the trial court's prior order as a "final, appealable judgment" in the case. Pursuant to the stipulation, on July 19, 2010, the trial court issued a final judgment in the terms of the prior order. This appeal followed.

## DISCUSSION

### I.. The Notice to the BAAQMD.

We first examine plaintiff's contention that the County failed to give proper notice to the BAAQMD of the hearing and intent to adopt the final mitigated negative declaration. Examination of the record reveals that at the inception of the project the County provided notice of Mesa's application for design

---

[3] The court also found that the County failed to consider the impacts of "construction-related traffic," but determined the deficiency was moot, as the project had already been completed.

review to the BAAQMD and solicited comments on the project. The BAAQMD did not respond, but in the mitigated negative declaration the Department noted and adopted the BAAQMD's published CEQA guidelines, air quality plan, and quantitative criteria to assess the impact of the project on air quality. Upon doing so, the Department stated that the project had no features that would conflict with the BAAQMD's plans, and would not generate pollutants at levels above the threshold of cumulative quantitative significance set by the BAAQMD—that is, fewer than 2,000 vehicles per day.[4] Toward the close of the lengthy design review process in the present case, on July 23, 2008, the County published a revised mitigated negative declaration, and sent notice of the scheduled hearing before the Board to consider the revisions and plaintiff's appeal. The County provided public notice by publication in newspapers of general circulation in the area, postings on the property where the project was located and the civic center, and direct mailings to the owners and occupants of property contiguous to the project. (Guidelines, § 15072.) As required, the County also submitted the proposed mitigated negative declaration to the State Clearinghouse for distribution and review by the public agencies with jurisdiction by law over natural resources affected by the project. (Guidelines, §§ 15072, 15073.) The State Clearinghouse received the notice, and advised the County of its compliance with the review requirements for draft environmental documents, but did not forward the notice to the BAAQMD.

Plaintiff complains that the failure of the County to provide notice to the BAAQMD as a responsible state agency constitutes a lack of compliance with CEQA requirements. She further argues that the error violated the "public participation policies of CEQA," and requires that we set aside the approval of the project.

■ A central feature of CEQA is that "*before* adopting a negative declaration, the agency is required to give notice to the public and allow time for comments." (*Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 743 [36 Cal.Rptr.2d 687].) To implement the provision in section 21080.3, subdivision (a), that the lead agency must consult " 'with any other public agency which has jurisdiction by law over natural resources affected by the project which are held in trust for the people of the State of California,' " the "Guidelines require the lead agency to send notice of its intent to adopt a negative declaration, together with a copy of a proposed negative declaration, 'to every . . . Trustee Agency concerned with the project and every other public agency with jurisdiction by law over resources affected by a project.' [Citation.] Also, if one or more trustee agencies, or public agencies with jurisdiction over resources affected by the project, is a state agency, the

---

[4] The proposed project was the relocation of a facility that generated fewer than 700 trips per day.

Guidelines require the lead agency to send the proposed negative declaration to the State Clearinghouse maintained by the Office of Planning and Research, which distributes it to the state agencies." (*Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1386 [43 Cal.Rptr.2d 170], fns. omitted.)

The County was required to consult with the BAAQMD, as a public agency with jurisdiction over resources affected by the project (§ 21063; Guidelines, § 15386), before conducting an initial study, and subsequently was required to notify the BAAQMD of the intention to adopt a mitigated negative declaration. (§ 21080.3, subd. (a); Guidelines, §§ 15063, subd. (g), 15072, subd. (a); *Mejia v. City of Los Angeles* (2005) 130 Cal.App.4th 322, 340 [29 Cal.Rptr.3d 788].) In our examination of the County's compliance with the notice requirements of CEQA, "we independently review the administrative record to determine whether County proceeded in a manner consistent with the requirements of CEQA. [Citations.] As recently summarized by our Supreme Court: 'An appellate court's review of the administrative record for legal error and substantial evidence in a CEQA case, as in other mandamus cases, is the same as the trial court's: The appellate court reviews the agency's action, not the trial court's decision; in that sense appellate judicial review under CEQA is de novo. [Citations.] We therefore resolve the substantive CEQA issues . . . by independently determining whether the administrative record demonstrates any legal error by the County and whether it contains substantial evidence to support the County's factual determinations.' [Citation.]" (*Nelson v. County of Kern* (2010) 190 Cal.App.4th 252, 266 [118 Cal.Rptr.3d 736].)

■ Upon determining that an initial study was required, the County properly consulted informally with the public agencies responsible for resources affected by the project, including the BAAQMD. (Guidelines, § 15063, subd. (g).) The defect in the notice procedure occurred when the County failed to give notice to the BAAQMD of the intent to adopt the revised mitigated negative declaration. We disagree with Mesa's contention that the published and posted notices satisfied CEQA requirements. The Guidelines do not provide for alternative means of notice *instead* of direct mailing to public agencies. Rather, the lead agency must send copies of the proposed negative declaration or mitigated negative declaration to the State Clearinghouse for distribution to the state agencies, and "shall *also* give notice" by publication, posting and mailing. (Guidelines, §§ 15072, subd. (b), 15073, subd. (d), italics added.) The County sent copies of the proposed mitigated negative declaration to the State Clearinghouse for distribution, but the notice was not forwarded to the BAAQMD. Nor did the BAAQMD receive notice directly from the County.

■ The flaw in the notice procedure, although technical in nature, constituted noncompliance with CEQA, despite the solicitation of comments

from the BAAQMD during the initial study period, and even though the agency previously failed to express an opinion to the County that the project would have a significant effect on the environment. (See *Gentry v. City of Murrieta, supra,* 36 Cal.App.4th 1359, 1387.) " 'Full compliance with the letter of CEQA is essential to the maintenance of its important public purpose.' [Citation.] ' "[W]e must be satisfied that [administrative] agencies have fully complied with the procedural requirements of CEQA, since only in this way can the important public purposes of CEQA be protected from subversion." [Citation.] At least, when these protective provisions go to the heart of the protective measures imposed by the statute, failure to obey them is generally "prejudicial"; to rule otherwise would be to undermine the policy in favor of the statute's strict enforcement.' [Citation.] Depriving the public of the full public comment period 'thwart[s] the legislative intent underlying CEQA.' [Citation.] '[S]ubstantial rather than complete compliance with CEQA-mandated notice procedures [is] an abuse of discretion requiring vacating of the administrative decision.' [Citation.]" (*Gilroy Citizens for Responsible Planning v. City of Gilroy* (2006) 140 Cal.App.4th 911, 922 [45 Cal.Rptr.3d 102].)

The noncompliance does not necessarily compel reversal. " 'Noncompliance with CEQA's information disclosure requirements is not per se reversible; prejudice must be shown. [Citation.]' · [Citation.]" (*Sunnyvale West Neighborhood Assn. v. City of Sunnyvale City Council* (2010) 190 Cal.App.4th 1351, 1384–1385 [119 Cal.Rptr.3d 481], fn. omitted (*Sunnyvale West*).) "Only if the manner in which an agency failed to follow the law is shown to be prejudicial, or is presumptively prejudicial," must the decision to approve a project be set aside. (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1236 [32 Cal.Rptr.2d 19, 876 P.2d 505].)

However, the " ' "conventional 'harmless error' standard has no application when an agency has failed to proceed as required by the CEQA." [Citation.]' [Citation.]" (*Sunnyvale West, supra,* 190 Cal.App.4th 1351, 1388.) The "error is prejudicial where failure to comply with the law results in 'a subversion of the purposes of CEQA by omitting information from the environmental review process . . . .' " (*Fall River Wild Trout Foundation v. County of Shasta* (1999) 70 Cal.App.4th 482, 491 [82 Cal.Rptr.2d 705], quoting *Rural Landowners Assn. v. City Council* (1983) 143 Cal.App.3d 1013, 1023 [192 Cal.Rptr. 325].) "Section 21005, subdivision (a), states: 'The Legislature finds and declares that it is the policy of the state that noncompliance with the information disclosure provisions of this division which precludes relevant information from being presented to the public agency, or noncompliance with substantive requirements of this division, may constitute a prejudicial abuse of discretion within the meaning of Sections 21168 and 21168.5, regardless of whether a different outcome would have resulted if the public agency had complied with those provisions.' " (*Sunnyvale West, supra,* at

p. 1385; see also *California Oak Foundation v. Regents of University of California* (2010) 188 Cal.App.4th 227, 268–269 [115 Cal.Rptr.3d 631].) " 'The failure to comply with the law subverts the purposes of CEQA if it omits material necessary to informed decisionmaking and informed public participation. Case law is clear that, in such cases, the error is prejudicial. [Citations.]' " (*Sunnyvale West, supra,* at p. 1392, quoting *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 946 [91 Cal.Rptr.2d 66].)

■ We find that the failure to send notice to the BAAQMD was not prejudicial under the governing standard and the facts presented. First, the BAAQMD was given notice of the application for design review, but did not offer any input. The County then assumed the role of the BAAQMD by implementing the published CEQA quantitative criteria in the initial study to determine that the project had far fewer vehicle trips per day than the threshold level of cumulative significance. Further traffic studies did not alter the conclusion of no significant impact on air quality under the established BAAQMD criteria, which was repeatedly articulated and explained in the series of revised mitigated negative declarations.

The critical factor is that even without notice to the BAAQMD the information gathering and presentation mechanisms of CEQA were not subverted or even compromised. Before approval of the project, the County and the public were provided with the disclosures necessary to make an informed assessment of air quality impacts. The lack of notice did not result in the omission of relevant information from the review and decisionmaking process. Finally, after review of the notice of intent to adopt the revised mitigated negative declaration the BAAQMD confirmed that the project's "estimated operational criteria emissions are below the Air District's existing thresholds of significance." The failure to provide notice to the BAAQMD was not prejudicial.

II. *The Writ Relief Granted by the Trial Court.*

Plaintiff claims the trial court "violated CEQA" by issuing an order on the petition for writ of mandate that directed the County to provide notice to the BAAQMD, and specified: "The results of such notice will determine what further course of action, if any, is needed to cure the defects and ensure proper CEQA review of this project." The County subsequently provided notice to the BAAQMD, received a response, and issued a Certificate of Compliance with the court's order. Plaintiff characterizes the trial court's order as "an improper interlocutory remand," and maintains that the court was "required to set aside Project approval for failure to provide notice to a responsible agency."

■ We find nothing in the trial court's order that contravened the remedial procedures sanctioned by CEQA. Section 21168.9 "provides alternative remedies which allow the trial court to tailor the remedy to fit the violation." (*San Bernardino Valley Audubon Society v. Metropolitan Water Dist.* (2001) 89 Cal.App.4th 1097, 1102 [109 Cal.Rptr.2d 108].) The statute provides "that 'If a court finds . . . that any determination, finding, or decision of a public agency has been made without compliance with this division, the court shall enter an order that includes . . . [¶] . . . [a] mandate that the determination, finding, or decision be voided by the public agency, in whole or in part' or '[a] mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with this division.' (§ 21168.9, subd. (a)(1), (3).)" (*Schellinger Brothers v. City of Sebastopol* (2009) 179 Cal.App.4th 1245, 1266 [102 Cal.Rptr.3d 394].) "Section 21168.9 thus gives trial courts the option to void the finding of the agency (§ 21168.9, subd. (a)(1)), or to order a lesser remedy which suspends a specific project activity which could cause an adverse change in the environment (§ 21168.9, subd. (a)(2)), or to order specific action needed to bring the agency's action into compliance with CEQA (§ 21168.9, subd. (a)(3)). The choice of a lesser remedy involves the trial court's consideration of equitable principles." (*San Bernardino Valley Audubon Society, supra,* at p. 1104.) Section 21168.9, subdivision (b) specifies: "The order shall be made by the issuance of a peremptory writ of mandate specifying what action by the public agency is necessary to comply with this division."

Here, the trial court fashioned a remedy appropriate to the perceived violation. The County was directed to provide notice to the BAAQMD, and the court retained jurisdiction to take measures necessary to determine compliance with CEQA. The court's order was consistent with equitable principles and section 21168.9, subdivision (a)(3), as a specific lesser remedy needed to bring the agency's action into compliance with CEQA. In any event, the defect in the notice procedure was not prejudicial even without the subsequent notice and letter of approval from the BAAQMD, so the writ relief was unnecessary. Further, plaintiff forfeited any objection to the form of relief or compliance with CEQA procedures by failing to object at the administrative level or in the trial court. (See *Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 250 [103 Cal.Rptr.3d 124]; *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 909 [69 Cal.Rptr.3d 105].)

III. *The Notice to Caltrans and the Regional Water Board.*

Plaintiff also challenges the notice given to the Regional Water Board and the Department of Transportation (Caltrans). She acknowledges that the

Regional Water Board and Caltrans received the proposed fourth mitigated declaration through the State Clearinghouse as required by section 21082.1, subdivision (c)(4), but asserts that once those two agencies responded with comments the County was obligated to notify them of the scheduled public hearing on the project pursuant to Guidelines section 15072.

 Section 21092, subdivision (a) requires that the lead agency preparing a negative declaration "shall provide public notice of that fact within a reasonable period of time prior to certification of the environmental impact report, adoption of the negative declaration, or making the determination." The notice must "specify the period during which comments will be received on the draft environmental report or negative declaration, and shall include the date, time, and place of any public meetings or hearings on the proposed project, a brief description of the proposed project and its location, the significant effects on the environment, if any, anticipated as a result of the project, and the address where copies of the draft environmental impact report or negative declaration, and all documents referenced in the draft environmental impact report or negative declaration, are available for review." (§ 21092, subd. (b)(1).)[5] Subdivision (e) of section 15073 of the Guidelines provides: "The lead agency shall notify in writing any public agency which comments on a proposed negative declaration or mitigated

---

[5] Subdivisions (a) and (b) of section 21092 read in full: "(a) Any lead agency that is preparing an environmental impact report or a negative declaration or making a determination pursuant to subdivision (c) of Section 21157.1 shall provide public notice of that fact within a reasonable period of time prior to certification of the environmental impact report, adoption of the negative declaration, or making the determination pursuant to subdivision (c) of Section 21157.1.

"(b)(1) The notice shall specify the period during which comments will be received on the draft environmental report or negative declaration, and shall include the date, time, and place of any public meetings or.hearings on the proposed project, a brief description of the proposed project and its location, the significant effects on the environment, if any, anticipated as a result of the project, and the address where copies of the draft environmental impact report or negative declaration, and all documents referenced in the draft environmental impact report or negative declaration, are available for review.

"(2) This section shall not be construed in any manner that results in the invalidation of an action because of the alleged inadequacy of the notice content, provided that there has been substantial compliance with the notice content requirements of this section.

"(3) The notice required by this section shall be given to the last known name and address of all organizations and individuals who have previously requested notice and shall also be given by at least one of the following procedures:

"(A) Publication, no fewer times than required by Section 6061 of the Government Code, by the public agency in a newspaper of general circulation in the area affected by the proposed project. If more than one area will be affected, the notice shall be published in the newspaper of largest circulation from among the newspapers of general circulation in those areas.

"(B) Posting of notice by the lead agency on- and off-site in the area where the project is to be located.

"(C) Direct mailing to the owners and occupants of contiguous property shown on the latest equalized assessment roll."

negative declaration of any public hearing to be held for the project for which the document was prepared. *A notice provided to a public agency pursuant to Section 15072 satisfies this requirement.*" (Italics added.) Section 15072, in turn, directs that the lead agency must provide notice of intent to adopt a negative declaration or mitigated negative declaration to the public, responsible agencies, and trustee agencies, sufficiently prior to adoption by the lead agency of the negative declaration or mitigated negative declaration to allow the public and agencies an adequate review period, and must mail a notice of intent to adopt a negative declaration or mitigated negative declaration to the last known name and address of all organizations and individuals who have previously requested such notice in writing, and shall also give notice of intent to adopt a negative declaration or mitigated negative declaration by publication or posting.

As we read the record, in accord with sections 15072 and 15073, subdivision (c) of the Guidelines, the County provided the Regional Water Board and Caltrans, along with other listed agencies, with notice through the State Clearinghouse of the intent to adopt the attached revised mitigated negative declaration. The Regional Water Board and Caltrans were the only agencies that offered comments, which were subsequently addressed by the County in the fifth and final mitigated negative declaration. (§§ 21092, 21092.5, subds. (a), (b); Guidelines, § 15073, subd. (c); see also Guidelines, § 15023, subd. (c).) Section 15073, subdivision (e) of the Guidelines unambiguously states that a notice sent pursuant to section 15072 satisfies the requirement for notice of the public hearing to be held for the project. Subsequent notice of the continued hearing on plaintiff's appeal and the proposed adoption of the mitigated negative declaration, with the dates of the scheduled public hearing, was provided through publication and posting. Having furnished notice to the Regional Water Board and Caltrans pursuant to Guidelines section 15072, the County satisfied Guidelines section 15073, subdivision (c). The County thus substantially complied with the statutory notice content requirements, which under subdivision (b)(2) of section 21092 of the Public Resources Code avoids invalidation of the approval of the mitigated negative declaration.

In any event, the notice procedure related to Caltrans and the Regional Water Board did not result in any prejudicial impact on the CEQA process. The County and the public previously received the comments of the public agencies to the fourth mitigated declaration. The comments of Caltrans and the Regional Water Board with respect to traffic, noise, water quality and biological analyses were addressed by the Department staff and in additional information provided by Mesa before the hearing. Specified mitigation measures included traffic mitigation fees, a wetlands delineation, dedication of a riparian corridor along Mark West Creek, and planting of native vegetation. The fifth and final mitigated negative declaration subsequently released and

circulated by the County was not altered in substance from the prior version, and no new impacts were identified. No information was omitted from the environmental review and decisionmaking process.

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Accordingly, the judgment is affirmed.

Marchiano, P. J., and Banke, J., concurred.

---

*See footnote, *ante*, page 949.