The many environmental impacts addressed in the DEIR included the impacts on the water supply and traffic. The DEIR stated that the Reduced Density/Redesigned Project Alternative would incorporate a storm water retention/percolation system to capture runoff from three areas: the project site, the surface area of the adjacent service station site, and the adjacent hillside. This alternative would reduce water consumption due to reduced building square footage and the use of LEED equivalent fixtures and landscaping. Based on the reports of Whitson Engineers, the DEIR stated that implementation of the Reduced Density/Redesigned Project Alternative would result in recharge of the groundwater basin and potentially no significant impact to groundwater resources.
Regarding traffic impacts, the DEIR included an analysis of the project's impacts on vehicle traffic at several Highway 68 intersections in the vicinity of the project. The DEIR stated that the project would have significant *888 unavoidable impacts on two intersections, including the intersection of Highway 68 and Corral de Tierra Road, despite the proposed mitigation measures.
C. The County's Approval of Omni's Project and Final EIR
Several public hearings regarding the project were held before the County's Board of Supervisors in 2011 and 2012. During that time, the project was redesigned by County staff and Omni to address the Board of Supervisor's concerns, which included reducing the size of the shopping center. There was also an investigation of the evidence of soil and water contamination from the removal of underground gas tanks in an adjacent parcel.
On February 7, 2012, the Board of Supervisors adopted Resolution No. 12-039, which certified the final EIR (FEIR) and adopted a statement of overriding considerations. The resolution states that "[t]ogether, the DEIR and the Responses to Comments constitute the final EIR on the project."
The Board of Supervisor's findings, as stated in Resolution No. 12-039, for certifying the FEIR and adopting a statement of overriding considerations included the following description of the project: "The project which the County is considering for approval concurrently with Certification of the EIR is [Omni's] proposed reduced density 99,970 square foot alternative which is similar to the reduced density alternative.... The 99,970 square foot alternative presented by the applicant is the environmentally superior alternative because as a variant of the reduced density alternative it also includes a reduction in building area and mass, a corresponding reduction in traffic and increases the landscape buffers along the street frontages of the site."
Resolution No. 12-039 also included the following findings regarding water impacts: "Potentially significant impacts on ground water have been mitigated to a less than significant level through the redesigned 99,970 square foot retail center including a storm water collection and *428 groundwater recharge system proposed by the applicant and approved by the Board of Supervisors. This design will result in a net water balance for operation of the retail village at this location." As to traffic impacts, the Board of Supervisor's findings stated, among other things, that the DEIR had found that the project would have direct impacts on traffic that could not be mitigated to a less than significant level.
On February 7, 2012, the Board of Supervisors adopted a second resolution concerning Omni's project, Resolution No. 12-240, which approved the combined development permit and general development plan for the project. Resolution No. 12-240 included the Board of Supervisor's findings that the project, as conditioned, was consistent with the 2010 Monterey County General Plan, the Toro Area Plan, and the Monterey County Zoning Ordinance.
*889 Among other findings included in Resolution No. 12-240, the Board of Supervisors stated that "[t]he project has an adequate long-term water supply and manages development in the area so as to minimize adverse effects on the aquifers and preserve them as viable sources of water for human consumption." The Board of Supervisors further found that "[t]he existing groundwater basin in the El Toro area is in overdraft and this has resulted in the placement of the 'B-8' Zoning Overlay District in an area of the Toro Area Plan including the project site. The project would use a maximum of 9.0 acre-feet per year (AFY) of water and the underground water recharge system approved for the 99,970 square foot project would return 9.66 AFY of water to the underground basin which results in a net positive water balance ... [¶] ... [¶] provided that the development can be found to not adversely affect the constraints which caused the 'B-8' District to be applied to the property."
D. The Petition for Writ of Mandate
In March 2012, Highway 68 filed a petition for writ of mandate challenging the County's approval of Omni's shopping center project on the ground that County had failed to comply with CEQA. Highway 68 sought a writ of mandate directing the County and the Board of Supervisors to set aside their February 7, 2012 approvals of the project and to prepare and circulate a legally adequate EIR in any subsequent action to approve the project.
Highway 68 alleged that the specific CEQA violations included (1) the EIR failed to analyze the water rights for the project; (2) the project's "recharge scheme" to "capture stormwater runoff from the project site and put it in underground chambers" was uncertain without measurement of the amount of groundwater recharge; (3) the EIR failed to investigate the traffic impacts on segments of Highway 68 that were already at the lowest level of service; (4) the EIR failed to adequately address the project's impact on greenhouse gases; (5) the environmental review was improperly piecemealed because the adjacent gas station was not included; and (6) the EIR did not adequately address the impacts on sewage capacity.
In addition, Highway 68 asserted that the project was inconsistent with the 2010 General Plan because Policy PS-3.2 requires projects to have a long term sustainable water supply. Highway 68 also asserted that the project was inconsistent with the Toro Area Plan because a parking lot was placed in the required 100-foot setback.
E. Intended Decision and Interlocutory Remand
After the trial court heard argument on Highway 68's writ petition and issued an intended decision, objections to the intended *429 decision were filed *890 and in June 2014 the court heard further argument. On July 29, 2014, the trial court entered an order of interlocutory remand that included the court's rulings on Highway 68's claims of CEQA violations. The trial court rejected Highway 68's claims of CEQA violations, but determined that an interlocutory remand was appropriate with regard to an issue of general plan consistency.
The trial court's determination that an interlocutory remand should issue arose from the court's finding that Policy PS-3.1 of the County's 2010 general plan requires "a 'specific finding and supporting evidence' of a long-term sustainable water supply based on the PS-3.2 criteria." (Italics added.) The court further found that County had approved the project based on a finding in Resolution 12-240 with different language: " 'The Project has an adequate long-term water supply and manages development in the area so as to minimize adverse effects on the aquifers and preserves them as viable sources of water for human consumption.['] " (Italics added.) The court noted that the 2010 general plan defines "long term sustainable water supply" as "a water supply ... that can provide for current and projected future demand for water from the source as determined pursuant to the criteria required to be adopted by Policy PS-3.2."
Based on these provisions of the 2010 general plan and the trial court's findings that substantial evidence supported the County's findings and conclusions regarding water (including the water balance analysis, the water demand analysis,, and the recharge analysis), the court ruled that "the County is required to determine whether or not there is a Long Term Sustainable Water Supply. The failure to make this determination was an abuse of discretion."
Due to the trial court's finding of an abuse of discretion, the court stayed its July 29, 2014 intended decision and issued an interlocutory remand "so the Board of Supervisors can decide whether or not there is a Long Term Sustainable Water Supply." The court relied on the decision in Voices of the Wetlands v. State Water Resources Control Bd. (2011) 52 Cal.4th 499, 128 Cal.Rptr.3d 658, 257 P.3d 81 ( Voices of the Wetlands ) as authority for the interlocutory remand procedure.
The Board held a hearing on remand on December 16, 2014.[3] After a presentation by the County's planning department and presentations by *891 counsel for Omni and Highway 68, the Board of Supervisors adopted Resolution No. 14-360 and clarified that the project "has a long-term sustainable water supply, both in quality and quantity to serve the development in accordance with the 2010 Monterey County General Plan Policies PS-3.1 and PS-3.2 and is therefore consistent with Policies PS-3.1 and PS-3.2." The Board of Supervisors also stated in Resolution No. 14-360 that "[t]he Board's 2012 findings in support of approving the project implied that the project has a long term sustainable water supply and were based on substantial evidence in the record. The Board's finding today in response to the court's interlocutory order clarifies for the court that the Board intended to find and does hereby explicitly find that the project has a long term sustainable water supply." *430 The Board of Supervisors further stated in Resolution No. 14-360 that "[t]o the extent that the Board's action today finding that the project has a long term sustainable water supply could be construed as a discretionary action subject to CEQA, the Board finds pursuant to ... section 21166 and CEQA Guidelines section 15162[4 ] that no additional environmental review for this action is required because there are no substantial changes in the project description, no changes in circumstances, and no new significant information that would require revision to the [EIR] prepared for the project."
F. Ruling After Interlocutory Remand and Judgment
In March 2015, Highway 68 filed an "opening brief" contending that its writ petition should be granted because the County had violated procedural due process during the remand proceedings and also had violated CEQA. In April 2015, Highway 68 filed a motion for leave to file a supplemental writ petition in which Highway 68 sought a writ of mandate directing the County to set aside Resolution No. 14-360. The trial court granted the motion.
After further briefing and oral argument by the parties, including Omni's opposition to Highway 68's "opening brief," the trial court entered a "Ruling on Respondent's Actions on Interlocutory Remand" on June 18, 2015. The trial court began its ruling by finding that procedures on remand had not violated due process, as follows: (1) the hearing notice provided to Highway 68 was legally sufficient; (2) Highway 68 had sufficient time to review and analyze the documents provided to the Board by the County; (3) Omni's pre-hearing meeting with one supervisor did not establish bias; (4) the Board's failure to consider the material submitted by Highway 68 at the remand *892 hearing did not violate due process; (5) Highway 68 had a reasonable opportunity to be heard at the remand hearing; and (6) even assuming that Highway 68 did not receive adequate notice and an opportunity to be heard, Highway 68 had failed to show prejudice.
The trial court next considered whether substantial evidence supported the Board's finding that the Omni project "has a long term, sustainable water supply both in quality and quantity to serve the development in accordance with the 2010 Monterey County General Plan Policies PS 3.1 and PS 3.2 and is therefore consistent with Policies PS-3.1 and PS-3.2." The court found that the County's conclusion that the project would achieve a positive water balance by using a water recharge system and limiting water demand to 9.0 AFY was supported by substantial evidence.
Having accepted "the Board's findings clarifying its intent in 2012 as to the Board's Finding 9: that the Board intended to find that the Project has a Long Term Sustainable Water Supply consistent with the requirements of the 2010 Monterey County General Plan," the trial court lifted the stay on its prior decision and denied Highway 68's petition for a writ of mandate.
Judgment in favor of the County and Omni was filed on July 27, 2015. The judgment also states that the July 29, 2014 order of interlocutory remand and the June 18, 2015 ruling on respondent's action on interlocutory remand together constitute the court's statement of decision.
*431 III. DISCUSSION
On appeal, Highway 68 contends that the trial court erred in denying its petition for writ of mandate for several reasons: (1) the trial court erred in issuing an interlocutory remand; (2) the County violated Highway 68's right to procedural due process on interlocutory remand; (3) the County violated CEQA because the water supply analysis was inadequate, the analysis of the project's consistency with the County's general plan was inadequate, the EIR's traffic analysis was inadequate, and environmental review of Omni's project was improperly segmented.
We will begin our evaluation of Highway 68's contentions with the procedural issues raised on appeal.
A. Propriety of Interlocutory Remand
According to Highway 68, the trial court erred in issuing an interlocutory remand to allow the County to make a finding of a long term sustainable water supply for the Omni project, as required by the County's 2010 general *893 plan, because CEQA does not authorize an interlocutory remand where an agency has abused its discretion under CEQA. Highway 68 maintains that where an agency has abused its discretion the only allowable procedure, as set forth in section 21168.9, is an order made by way of a writ of mandate compelling compliance with CEQA.
The County responds that an interlocutory remand to the Board was within the trial court's inherent powers and Omni agrees. Omni further argues that section 21168.9 does not apply to bar the interlocutory remand in this case, for two reasons: (1) the trial court found that the County had complied with CEQA with regard to water resources because the FEIR included a finding that the project has an adequate long term water supply; and (2) section 15125, subdivision (d) of the CEQA Guidelines does not require an analysis of the proposed project's consistency with the general plan. Omni emphasizes that the County's General Plan, not CEQA, requires a finding that a development has a long-term sustainable water supply.
Relying on Voices of the Wetlands , supra , 52 Cal.4th 499, 128 Cal.Rptr.3d 658, 257 P.3d 81 and Code of Civil Procedure section 1094.5, Omni also argues that the trial court may properly order an interlocutory remand to clarify the County's intent regarding the question of whether the project is consistent with the general plan because it has a long term sustainable water supply. Alternatively, Omni and the County assert that Highway 68 has waived any claim of general plan inconsistency because the petition for writ of mandate did not raise any issues of general plan inconsistency.
We need not address the issue of waiver because we will resolve the issue of whether the trial court was authorized to order an interlocutory remand in this case on the merits. We also need not consider Highway 68's contention that the trial court erred under CEQA by failing to conclude that the "EIR did not properly address the inconsistency of the proposed Project with the General Plan," which is raised for the first time in the reply brief. Appellate courts ordinarily will not consider new issues that are raised for the first time in the appellant's reply brief as the respondent has no opportunity to counter such contentions. ( Reichardt v. Hoffman (1997) 52 Cal.App.4th 754, 764-765, 60 Cal.Rptr.2d 770.)
We determine that the issue of whether a proposed project is consistent with a county's general plan is not a CEQA issue, and therefore the mandate procedures provided for CEQA violations *432 at section 21168.9 do not apply. The CEQA Guidelines provide: "The EIR shall discuss any inconsistencies between the proposed project and applicable general plans, specific plans and regional plans." (Guidelines, § 15125, subd. (d).) Thus, as this court has stated, " ' "[w]hile there is no requirement that an EIR itself be *894 consistent with the relevant general plan, it must identify and discuss any inconsistencies between a proposed project and the governing general plan. [Citation.]" [Citation.] "Because EIRs are required only to evaluate 'any inconsistencies ' with plans, no analysis should be required if the project is consistent with the relevant plans. [Citation.]" [Citation.]' [Citation.]" ( Pfeiffer , supra , 200 Cal.App.4th at p. 1566, 135 Cal.Rptr.3d 380.) Accordingly, "the agency's decisions regarding project consistency with a general plan are reviewed by ordinary mandamus." ( San Francisco Tomorrow v. City and County of San Francisco (2014) 229 Cal.App.4th 498, 515, 176 Cal.Rptr.3d 430.)
Since an agency's decisions regarding general plan consistency are reviewed by ordinary mandamus, we determine that the trial court did not err in ordering an interlocutory remand in this case. The California Supreme Court stated in Voices of the Wetlands that "[d]ecisions have long expressed the assumption that the court in a mandamus action has inherent power, in proper circumstances, to remand to the agency for further proceedings prior to the entry of a final judgment. [Citations.] ... [¶] We perceive no compelling reason why the Legislature would have wished to categorically bar interlocutory remands in administrative mandamus actions." ( Voices of the Wetlands , supra , 52 Cal.4th at p. 527, 128 Cal.Rptr.3d 658, 257 P.3d 81 ; see also No Oil, Inc. v. City of Los Angeles (1974) 13 Cal.3d 68, 81, 118 Cal.Rptr. 34, 529 P.2d 66 [trial court has inherent power in mandamus action to remand a matter to an administrative agency for clarification of ambiguous findings]; Keeler v. Superior Court (1956) 46 Cal.2d 596, 600, 297 P.2d 967 [court's inherent power to control the course of litigation includes "the power to remand a cause in mandamus for further proceedings which are deemed necessary for a proper determination"].)
In Voices of the Wetlands , the trial court had ordered a limited interlocutory remand to a Regional Water Board to allow it " 'to conduct a thorough and comprehensive analysis' " on a specific issue (finding No. 48 regarding cooling water intake structures) that was not supported by the weight of the evidence. ( Voices of the Wetlands , supra , 52 Cal.4th at p. 513, 128 Cal.Rptr.3d 658, 257 P.3d 81 ; see id. at pp. 507, 510, 525-531, 128 Cal.Rptr.3d 658, 257 P.3d 81.) Our Supreme Court determined that "[u]nder the circumstances presented, the trial court's choice to utilize this device was eminently practical. Plaintiff's mandamus petition challenged only a single, discrete facet of the lengthy and complex [National Pollutant Discharge Elimination System] permit order.... The trial court ultimately concluded that a single finding on this issue-finding No. 48-lacked evidentiary and analytic support. Confronted with this situation, the trial court reasonably concluded it need not, and should not, enter a final judgment vacating the entire permit pending further consideration of that issue." ( Id. at p. 529, 128 Cal.Rptr.3d 658, 257 P.3d 81.)
For these reasons, our Supreme Court concluded in Voices of the Wetlands that the trial court had properly ordered an interlocutory remand to *895 the Regional Water Board "to resolve perceived deficiencies" in the evidentiary and analytical support for finding No. 48 in advance of a final judgment. ( Voices of the Wetlands , supra , 52 Cal.4th at p. 530, 128 Cal.Rptr.3d 658, 257 P.3d 81.) We reach a similar result in the present case. Here, there was a single, *433 discrete issue of general plan consistency that the trial court determined required clarification before the County's approval of Omni's project could be upheld. The Board of Supervisors found that " '[t]he Project has an adequate long-term water supply ,' " although County's 2010 general plan requires "a 'specific finding and supporting evidence' of a long-term sustainable water supply ." (Italics added.) The court stayed its July 29, 2014 intended decision and issued an interlocutory remand "so the Board of Supervisors can decide whether or not there is a Long Term Sustainable Water Supply." Guided by the decision in Voices of the Wetlands , we determine that "[u]nder the circumstances presented, the trial court's choice to utilize this device was eminently practical" and well within the court's inherent power in a mandamus action "to remand to the agency for further proceedings prior to the entry of a final judgment." (See Id. at pp. 529, 527, 128 Cal.Rptr.3d 658, 257 P.3d 81.)
Highway 68 contends that the present case is distinguishable from Voices of the Wetlands , since that decision did not involve CEQA, and therefore the trial court was not authorized to utilize the interlocutory remand procedure. We disagree, since, as we have discussed, the interlocutory remand in this case involved a discrete, non-CEQA issue of general plan consistency that is subject to review by mandamus, and our Supreme Court in Voices of the Wetlands instructed that "the court in a mandamus action has inherent power, in proper circumstances, to remand to the agency for further proceedings prior to the entry of a final judgment. [Citations.]" ( Voices of the Wetlands , supra , 52 Cal.4th at p. 527, 128 Cal.Rptr.3d 658, 257 P.3d 81.) We therefore find no merit in Highway 68's challenge to the trial court's order of interlocutory remand in this case.
B.-C.**
D. Consistency with the General Plan
Highway 68 also contends that the FEIR failed to analyze whether Omni's project was consistent with the County's 2010 general plan; the County did not seek the advice of the general manager of the Water Resources Agency as required by Policy 3.2 in the general plan; and the County's finding on interlocutory remand that the project has a long term sustainable water supply is not supported by substantial evidence.
*896 The County responds general plan consistency is not an issue reviewed under CEQA. We agree, since, as we have discussed, CEQA does not require an analysis of general plan consistency. (See Pfeiffer , supra , 200 Cal.App.4th at p. 1566, 135 Cal.Rptr.3d 380.)
The County also argues that Highway 68 fails to meet its burden to show that no reasonable person would have reached the Board of Supervisor's conclusion that Omni's project has a long term sustainable water supply consistent with general plan Policies 3.1 and 3.2. Again, we agree.
Under the Government Code, every county and city is required to adopt " 'a comprehensive, long-term general plan for the physical development of the county or city....' ( Gov. Code, § 65300.) ... ' "[T]he propriety of virtually any local decision affecting land use and development depends upon consistency with the applicable general plan and its elements." [Citation.]' [Citation.]" ( *434 Friends of Lagoon Valley v. City of Vacaville (2007) 154 Cal.App.4th 807, 815, 65 Cal.Rptr.3d 251 ( Friends of Lagoon Valley .)
" ' "An action, program, or project is consistent with the general plan if, considering all its aspects, it will further the objectives and policies of the general plan and not obstruct their attainment." [Citation.]' [Citation.] State law does not require perfect conformity between a proposed project and the applicable general plan...." ( Friends of Lagoon Valley, supra, 154 Cal.App.4th at p. 817, 65 Cal.Rptr.3d 251.)
This court addressed the applicable standard of review in S ave Our Peninsula Committee v. Monterey County Bd. of Supervisors (2001) 87 Cal.App.4th 99, 142, 104 Cal.Rptr.2d 326.) "When we review an agency's decision for consistency with its own general plan, we accord great deference to the agency's determination. This is because the body which adopted the general plan policies in its legislative capacity has unique competence to interpret those policies when applying them in its adjudicatory capacity. [Citation.] ... A reviewing court's role 'is simply to decide whether the city officials considered the applicable policies and the extent to which the proposed project conforms with those policies.' [Citation.]" ( Ibid. )
Accordingly, an agency's "findings that the project is consistent with its general plan can be reversed only if it is based on evidence from which no reasonable person could have reached the same conclusion. [Citation.]" ( A Local & Regional Monitor v. City of Los Angeles (1993) 16 Cal.App.4th 630, 648, 20 Cal.Rptr.2d 228 ( A Local ).) The party challenging a city's determination of general plan consistency has the burden to show why, based on all of the evidence in the record, the determination was unreasonable. ( Native Plant Society v. City of Rancho Co r dov a (2009) 172 Cal.App.4th 603, 639, 91 Cal.Rptr.3d 571.)
*897 Here, as stated in Resolution No. 14-360, the Board of Supervisors clarified that the project "has a long-term, sustainable water supply, both in quality and quantity to serve the development in accordance with the 2010 Monterey County General Plan Policies PS-3.1 and PS-3.2 and is therefore consistent with Policies PS-3.1 and PS-3.2." The Board of Supervisors also stated in Resolution No. 14-360 that "[t]he Board's 2012 findings in support of approving the project implied that the project has a long term sustainable water supply and were based on substantial evidence in the record. The Board's finding today in response to the court's interlocutory order clarifies for the court that the Board intended to find and does hereby explicitly find that the project has a long term sustainable water supply."
Policies PS 3.1 and PS 3.2 were described as follows in Resolution No. 14-360: "Policy PS-3.1 of the 2010 Monterey County General Plan provides: 'new development for which a discretionary permit is required, and that will use or require the use of water, shall be prohibited without proof, based on specific findings and supported by the evidence, that there is a long-term, sustainable water supply, both in quality and quantity to serve the development.' [¶] ... Policy PS-3.2 of the 2010 Monterey County General Plan provides criteria for developing an ordinance for determining whether a long term sustainable water supply (LTSWS) exists. Until the ordinance is adopted, staff has used the criteria in Policy PS-3.2 for guidance."
The Board of Supervisors also summarized its findings in Resolution No. 14-360: "The project has a long term sustainable water supply because of the project's net positive water balance. The underground water recharge system approved for the *435 project would return more water to the groundwater basin than the project would use. The Board acknowledges that the existing groundwater basin in the El Toro area is in overdraft; however, this project will not adversely affect the groundwater basin because the project's water use is limited to a maximum of 9.0 acre-feet per year (afy), and the underground water recharge system approved for the project would return 9.66 afy of water to the underground basin, which results in a net positive water balance. This evidence was presented to the Board prior to its 2012 approval of the project and was cited in its 2012 findings for project approval. In its intended decision, the Superior Court held that there is substantial evidence to support the County's 2012 findings and conclusions regarding the water balance analysis, the water demand analysis, and the recharge analysis (page 143 of the Order of Interlocutory Remand). The Board by its finding today does not disturb its 2012 findings and conclusions regarding water balance, water demand, and recharge."
Having reviewed the Board of Supervisors's determination of general plan consistency, as stated in Resolution No. 14-360, we find that Highway 68 has *898 not met its burden to show why, based on all of the evidence in the record, the determination of the Board of Supervisors was unreasonable. ( Native Plant Society , supra , 172 Cal.App.4th at p. 639, 91 Cal.Rptr.3d 571.). Therefore, we may not reverse the Board of Supervisor's finding of general plan consistency with respect to Policies 3.1 and 3.2. (See A Local , supra , 16 Cal.App.4th p. 648, 20 Cal.Rptr.2d 228.)
IV. DISPOSITION
The judgment is affirmed. Costs on appeal are awarded to respondents.
WE CONCUR:
ELIA, ACTING P.J.
MIHARA, J.

This court denied Highway 68's writ petition challenging the trial court's July 29, 2014 order of interlocutory remand and requesting a stay of the order. (The Highway 68 Coalition v. Superior Court, denied, Dec. 12, 2014, H041478.) This court granted Omni's motion to dismiss Highway 68's appeal of the July 29, 2014 order of interlocutory remand as taken from a nonappealable order. (The Highway 68 Coalition v. County of Monterey, granted, Mar. 23, 2015, H041505.)

"The regulations that guide the application of CEQA are set forth in title 14 of the California Code of Regulations, and are often referred to as the CEQA Guidelines. [Citation.]" (Pfeiffer v. City of Sunnyvale City Council (2011) 200 Cal.App.4th 1552, 1561, fn. 5, 135 Cal.Rptr.3d 380 (Pfeiffer ); hereafter CEQA Guidelines or Guidelines.)

See footnote *, ante.