Filed 9/18/18; Modified and Certified for Partial Publication 9/26/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NANCY ATWELL et al.,<br><br>       Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF ROHNERT PARK,<br><br>       Defendant and Respondent;<br><br>WAL-MART STORES, INC.,<br><br>       Real Party in Interest. | A151896, A153011<br><br>(Sonoma County<br>Super. Ct. No. SCV256891) |

Appellants Nancy Atwell, Elizabeth Craven, and Matthew Weinstein appeal the denial of their petition for writ of mandate against the City of Rohnert Park (City). In 2010 and 2015, the city council approved and reapproved an expansion for an existing Wal-Mart store, which would include a full grocery component. Appellants contend the city council's second approval was inconsistent with its General Plan and land use policy LU-7. The trial court concluded appellants' petition was barred by res judicata because a prior petition challenging the city council's initial approval also asserted a claim contesting General Plan consistency. The trial court further held appellants' petition was barred by the statute of limitations and substantial evidence supported the city council's determination the expansion complied with the General Plan. We affirm the judgment.

# I.  BACKGROUND

## A. *The Initial Project and EIR*

The City's General Plan includes land use policy LU-7 (hereafter Policy LU-7) which declares the City's obligation to:  "Encourage new neighborhood commercial facilities and supermarkets to be located to maximize accessibility to all residential areas. [¶] The intent is to ensure that convenient shopping facilities such as supermarkets and drugstores are located close to where people live and facilitate access to these on foot or on bicycles.  Also, because Rohnert Park's residential population can support only a limited number of supermarkets, this policy will encourage dispersion of supermarkets rather than their clustering in a few locations."  (Italics omitted.)

In 2009, Wal-Mart Stores, Inc. (Wal-Mart) filed an application with the City, proposing to expand its existing store located in the northwest corner of town.  The expansion would add approximately 36,000 square feet to the existing Wal-Mart "big box" discount store for the addition of a 24-hour grocery/supermarket (Project).

In 2010, the City prepared a draft environmental impact report (EIR).  That EIR evaluated whether the Project was consistent with the General Plan.  With regard to Policy LU-7, the draft EIR concluded the Project was "consistent."  It stated:  "The proposed project would expand the existing Walmart store to add space for food sales. There are no existing grocery stores within a 1-mile radius of the project site; therefore, the proposed project would be consistent with the commentary language concerning dispersal of grocery uses throughout the City.  Furthermore, the proposed project would install bicycle storage facilities and enhance pedestrian facilities to improve accessibility for these modes of transportation.  Finally, the 24-hour operation of the expanded store would provide local residents with the opportunity to shop at times when existing stores are not open . . . . These characteristics are consistent with the objective of maximizing accessibility to supermarkets."

In response, the City received public comments asserting the Project was not consistent with the General Plan or Policy LU-7.  These letters argued the Project would close existing neighborhood-serving grocery stores, is located in a large commercial area,

and would contribute to an over-concentrated area around the U.S. Highway 101/Rohnert Park Expressway interchange.

The City addressed these comments in its final EIR. It concluded the concerns lacked merit and did not detract from the Project's consistency with Policy LU-7. Specifically, it noted the Project would be "well-positioned" to serve residents in northern Rohnert Park as well as residents in Cotati and southwest Santa Rosa. The City further noted drive times to the Project are shorter than or similar to the time needed to reach other existing supermarkets.

The planning commission subsequently considered the EIR. Following a public hearing, the planning commission declined to approve the original EIR or the Project. The planning commission instead concluded the EIR and Project did not comply with the General Plan and was, in part, inconsistent with Policy LU-7.

Wal-Mart subsequently appealed the planning commission's decision to not certify the EIR, arguing the EIR satisfied the requirements of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) and complied with Policy LU-7. Following a public hearing at which Policy LU-7 was discussed, the city council granted the appeal and specifically found "The Project would be consistent with all applicable General Plan goals and policies . . . ." The resolution approving the site plan concluded: "The Project, as proposed and with recommended conditions and mitigation measures, will be consistent with the General Plan and Zoning Ordinance."

**B. *The* Sierra Club *Action***

Sierra Club and Sonoma County Conservation Action (SCCA) filed a petition for writ of mandate in Sonoma County Superior Court challenging the city council's EIR and Project approvals. (*Sierra Club v. City of Rohnert Park* (2012, No. SCV248112) (*Sierra Club* action).) Appellants were not named parties in that action. The petition asserted three causes of action for violating CEQA, the state Planning and Zoning Law (Gov. Code, § 65000 et seq.), and the Rohnert Park Municipal Code. The second cause of action for violations of the state Planning and Zoning Law alleged: "The Project is inconsistent and incompatible with applicable goals, policies and objectives of the

3

Rohnert Park General Plan, including but not limited to . . . Policy LU-7 . . . ." The *Sierra Club* action requested in part a peremptory writ of mandate commanding the City to set aside its EIR certification and Project approval.

Although raised in its petition, Sierra Club and SCCA did not pursue the claim that the Project conflicted with Policy LU-7. The trial court subsequently granted the petition and ordered the resolutions approving the Project be vacated and the Project be remanded for additional environmental review. Specifically, the court ordered "the EIR must address each and every traffic mitigation measure proposed for the Project and reanalyze the cumulative noise impacts . . . ."

## C. *Revised EIR and Subsequent Administrative Appeals*

The City vacated the Project approvals and prepared a revised EIR. However, the revised EIR did not alter the original EIR's analysis of the Project's consistency with the General Plan.

In 2014, the planning commission held a public hearing on the revised EIR. Appellants objected to the Project during this hearing, alleging the Project "is in a section of town that has very few residents in it, and . . . that's clearly at odds with the LU-7 plan. The original economic plan says that it would draw customers from a wide area." In response, the City asserted the Project "is consistent with City of Rohnert Park's General Plan. [¶] Even now, one and two neighborhoods coming on line in the west side of Rohnert Park are neighborhoods that will need grocery stores and services. There are other businesses operating at an expanded time frame, where those workers do need grocery stores and services." The City also took the position that the issue of urban decay was not part of what the court found inadequate about the EIR and thus is not before the planning commission. The planning commission subsequently certified the revised EIR and reapproved the Project.

Appellants then appealed the planning commission's decision. At the public hearing on the appeal, appellants again objected to the Project and challenged its consistency with the General Plan. Wal-Mart opposed the appeal and argued the Project complied with Policy LU-7 for three principal reasons: (1) the Project is located where

4

there are no competing supermarkets within a mile, thereby meeting the goal of dispersing supermarkets; (2) the supercenter will be open 24 hours a day, helping augment options for local customers; and (3) the City, in the intervening years, has approved residential construction in the vicinity of Project. The City staff report also opined the Project was consistent with Policy LU-7, noting: "If anything, the Project is more consistent with the objectives of Policy LU-7 today than it was when it was considered in 2010 because of increased residential development in the vicinity of the Project." The city council denied the appeal and concluded the Project would comply with the City's General Plan and zoning ordinance.

## D. *Trial Court Proceedings*

In 2015, appellants filed a petition in the superior court challenging the Project's consistency with Policy LU-7 and seeking a writ of mandate ordering the City to vacate the Project approvals. After merits briefing was completed, the City filed a motion for judgment on the pleadings asserting appellants' claims were barred by the doctrine of res judicata.

The trial court issued a tentative order denying the petition and granting the City's motion for judgment on the pleadings. The tentative order concluded the petition was barred by res judicata and the statute of limitations. The order further concluded substantial evidence supported the city council's determination of General Plan consistency. Appellants did not contest the tentative order, and judgment was entered in favor of the City. Appellants timely appealed.

## II. DISCUSSION

### A. *Motion for Judgment on the Pleadings*

" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' [Citation.] 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' " (*People ex rel. Harris v. Pac Anchor Transportation, Inc*. (2014) 59 Cal.4th 772, 777.)

5

In granting the City's motion for judgment on the pleadings, the trial court concluded appellants' petition was barred by res judicata and the statute of limitations. For the reasons we explain below, we conclude res judicata bars appellants' petition. Accordingly, we need not address whether it also is barred by the statute of limitations.

## 1. Res Judicata

"The doctrine of res judicata bars a party and persons in privity with that party from relitigating a claim following a final judgment on the merits of the claim. ' " 'The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceedings.' " ' " (*Roberson v. City of Rialto* (2014) 226 Cal.App.4th 1499, 1510 (*Roberson*).) Res judicata not only bars issues actually litigated but also bars issues that *could have been* litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding. (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202 (*Federation of Hillside*).)

The City claims appellants' petition is barred by res judicata because consistency with the General Plan was challenged in the *Sierra Club* action, the *Sierra Club* action resulted in a final judgment, and appellants are in privity with Sierra Club and SCCA. While appellants agree the *Sierra Club* action resulted in a final judgment, they contend this petition raises distinct claims and they are not in privity with Sierra Club and SCCA.

### a. *Identical Cause of Action*

The second claim in the *Sierra Club* action alleged violations of the state Planning and Zoning Law. It asserted the Project "is inconsistent and incompatible with applicable goals, policies and objectives of the Rohnert Park General Plan," including Policy LU-7. Similarly, appellants' petition contends the Project violates the state Planning and Zoning Law because it conflicts with the Rohnert Park General Plan. The petition alleges "the Project directly contravenes Policy LU-7" and, due to such inconsistency, "the City acted

6

in an arbitrary and capricious manner and committed a prejudicial abuse of discretion in approving the Project . . . ." The petition also seeks a declaration of rights under the terms of the General Plan. Accordingly, the two petitions appear to raise the same issue regarding the Project's compliance with the City's General Plan.

Appellants assert their petition raises a distinct issue because the question of whether the Project is consistent with the General Plan was not actually litigated in the *Sierra Club* action. But as noted above, res judicata may bar issues that "*could have been litigated.*" (*Federation of Hillside*, *supra*, 126 Cal.App.4th at p. 1202, italics added.) Appellants, however, contend their petition could not have been litigated in the *Sierra Club* action because it is based on the city council's 2015 resolutions, which were approved following the *Sierra Club* action and contain new findings of General Plan consistency.

Whether appellants' challenge to the city council's 2015 resolutions and the prior challenge to the city council's 2010 resolutions constitute the same cause of action turns on whether "they are based on the same 'primary right.' " (*Federation of Hillside*, *supra*, 126 Cal.App.4th at p. 1202.) That is, "[t]he plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." (*Ibid*.) " '[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.' " (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160.)

In arguing the city council's 2015 resolutions constitute a new wrong, appellants rely on *Planning & Conservation League v. Castaic Lake Water Agency* (2010) 180 Cal.App.4th 210 (*Castaic Lake*). In that case, a nonprofit organization challenged an EIR concerning a water transfer. (*Id.* at p. 219.) The appellate court directed the issuance of a writ vacating the certification of the EIR as legally inadequate. (*Id.* at p. 221.) After a second EIR was certified in 2004, another petition was filed challenging the revised EIR. (*Id*. at pp. 218–219, 224.) The court concluded the subsequent petition

7

involved a different cause of action because the second EIR was a "factually distinct attempt[] to satisfy CEQA's mandates." (*Id.* at p. 228.) Specifically, the court concluded the initial action "and the underlying actions involve distinct episodes of purported noncompliance regarding 'the same general subject matter' [citation], namely, the public's statutory right to an adequate EIR concerning the [water] transfer [citations]." (*Ibid.*)

While *Castaic Lake* concluded the second petition could proceed due to " 'changed conditions and new facts which were not in existence at the time the action was filed' " (*Castaic Lake*, *supra*, 180 Cal.App.4th at p. 227), other courts have found subsequent petitions barred because they arise from materially similar facts. For example, in *Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455 (*Ballona Wetlands*), objectors filed petitions for writs of mandate challenging Los Angeles's certification of an EIR and project approvals for a certain real estate development. (*Id.* at p. 462.) After the trial court granted the petitions in part, Los Angeles vacated its certification of the EIR and project approvals. (*Id.* at p. 463.) Los Angeles then revised certain sections of the EIR, recertified it, and reapproved the project. (*Id.* at p. 464.) The objectors again challenged the EIR based both on the revisions and on new grounds. (*Ibid.*) The court concluded the objectors were barred from raising new challenges to the revised EIR: "After considering the petitioner's challenges to an EIR or other agency action and rendering a final judgment and peremptory writ of mandate, a trial court evaluating a return to the writ may not consider any newly asserted challenges arising from the same material facts in existence at the time of the judgment. To do so would undermine the finality of the judgment." (*Id.* at p. 480.)

Similarly, in *Federation of Hillside*, *supra*, 126 Cal.App.4th 1180, Los Angeles prepared a general plan framework and EIR, which cited and relied in large part on a transportation improvement mitigation plan. (*Id.* at p. 1190.) Following an initial petition challenging the general plan framework and EIR, Los Angeles amended the EIR to add responses to comments on the transportation improvement mitigation plan, made

8

new findings regarding mitigation measures, adopted a statement of overriding considerations, and readopted the general plan framework. (*Id.* at pp. 1191–1192.) A second petition was filed challenging the adoption of the general plan framework, CEQA findings, and statement of overriding considerations. (*Federation of Hillside*, at p. 1193.) On appeal, the court noted certain current findings by Los Angeles were substantially identical to its prior findings. (*Id.* at p. 1202.) Despite Los Angeles's reliance on information that postdated its initial CEQA findings, the court found "the material facts have not changed and . . . the two proceedings involve the same primary right and the same cause of action" because the reapproval of the general plan framework was primarily based on information and analysis contained in the original EIR. (*Federation of Hillside*, at p. 1204.)

We do not find these cases inconsistent. Both *Castaic Lake* and *Ballona Wetlands* cite *Federation of Hillside*. And neither disputes the holding in *Federation of Hillside*— namely, that res judicata barred the petitioners' challenges in the second proceeding because, in part, "the material facts had not changed and the issues asserted in the later proceeding could have been asserted in the prior proceeding." (*Ballona Wetlands*, *supra*, 201 Cal.App.4th at p. 480; see *Castaic Lake*, *supra*, 180 Cal.App.4th at p. 229 [distinguishing *Federation of Hillside* on the basis that it "challenged the same EIR and the material facts had not changed"].) *Ballona Wetlands* likewise concluded the materials facts had not changed such that res judicata was appropriate. (*Id.* at p. 480.) *Castaic Lake*, however, found material facts had changed and allowed the second petition to proceed. (*Id.* at p. 228.)

Accordingly, the key question is whether the city council's 2015 resolutions adopted new findings such that they constituted a new injury to appellants and a new wrong by the City. The city council's 2010 resolutions found, in relevant part, "The Project, as proposed and with recommended conditions and mitigation measures, will be consistent with the General Plan and Zoning Ordinance." Likewise, the 2015 resolutions found, in relevant part, "The Project, as proposed and with recommended conditions and mitigation measures, will be consistent with the General Plan and Zoning Ordinance."

9

There is no dispute the Project proposal remains unchanged. And both the 2010 and 2015 resolutions found the Project "will be consistent with the General Plan and Zoning Ordinance." Accordingly, the city council's 2015 resolutions raised a new issue only if the "recommended conditions and mitigation measures" included new or revised conditions or measures that are at issue in appellants' petition.

In the *Sierra Club* action, the trial court reversed the EIR because it was deficient in that it (1) failed to address certain proposed mitigation measures in connection with traffic impacts; and (2) failed to support its cumulative noise impact analysis with substantial evidence, consider mitigation measures, or adopt a statement of overriding consideration. The revised EIR addresses these two issues through revisions to (1) the executive summary matrix row regarding noise; (2) the section on noise, including thresholds of significance, project impacts, and mitigation measures; (3) the section on transportation; (4) the section on cumulative effects of noise; and (5) revisions to the cumulative noise analysis appendix. The revised EIR also added two new appendices on transportation demand management and store information (operations, policies, transportation demand management measures). No other revisions were made. The revised EIR does not mention Policy LU-7, and appellants' petition does not challenge the traffic or noise analyses. Rather, the petition focuses on the Project's location as incompatible with the goal of maximizing accessibility to residential areas. Consequently, even though the city council's 2015 resolutions are "new" and revisions were made to the EIR and its discussion of mitigation measures, these revisions are unrelated to Policy LU-7.

Moreover, all of appellants' arguments regarding Policy LU-7 are identical to those raised and argued before the city council in 2010. Concerns regarding the Project's compliance with the General Plan and Policy LU-7 were raised, discussed, and evaluated in connection with the original EIR and Project approval. Nothing in the record suggests appellants' current petition materially differs from the General Plan consistency claim raised in the *Sierra Club* action or the issues raised in public hearings on the original EIR

10

and Project approvals.  Accordingly, appellants' petition is not based on changed material facts and raises the same claims as raised in the *Sierra Club* action.

### b. *Privity*

Appellants next argue no privity exists between them, Sierra Club and SCCA because they (1) were not parties to the *Sierra Club* litigation, (2) are unaffiliated with the Sierra Club or SCCA, (3) did not coordinate with Sierra Club or SCCA on the prior litigation, and (4) seek redress for both public *and* private harms.  In response, the City contends appellants are in privity with Sierra Club and SCCA because both petitions seek to bring claims on behalf of the public against a public entity.

" ' "The concept of privity . . . refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights . . . .' " ' " (*Roberson*, *supra*, 226 Cal.App.4th at p. 1511, italics omitted.)  "Over time, courts have embraced a somewhat broader, more practical concept of privity.  ' "[T]o maintain the stability of judgments, insure expeditious trials," prevent vexatious litigation, and "to serve the ends of justice," courts are expanding the concept of privity beyond the classical definition to relationships " 'sufficiently close to afford application of the principle of preclusion.' " ' [Citation.] For example, more recently our Supreme Court explained the basic tenets of privity in broader terms:  'As applied to questions of preclusion, privity requires the sharing of "an identity or community of interest," with "adequate representation" of that interest in the first suit, and circumstances such that the nonparty "should reasonably have expected to be bound" by the first suit.  [Citation.]  A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's " ' "virtual representative" ' " in the first action.' " (*Castillo v. Glenair, Inc*. (2018) 23 Cal.App.5th 262, 276–277.)  "Put another way, privity, ' "as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation." ' " (*Id.* at p. 277, italics omitted.)

11

Here, both appellants' petition and the prior petition allege claims as, and on behalf of, citizens, taxpayers, property owners, and electors of Rohnert Park. While appellants argue their petition sets forth a private harm " 'because they will be directly and substantially affected by the adverse community impacts that may result from the Project,' " appellants fail to distinguish this harm from that alleged in the *Sierra Club* action. Nor do we see any meaningful distinction.

A similar argument was asserted and rejected in *Roberson*, *supra*, 226 Cal.App.4th 1499. In that matter, the City of Rialto approved construction of a large commercial retail center. (*Id*. at p. 1502.) Rialto Citizens for Responsible Growth (Rialto Citizens) petitioned to invalidate the project approvals based in part on a defect in the city council hearing notice. (*Id*. at p. 1505.) The trial court invalidated the approvals, which was then reversed on appeal. (*Id*. at p. 1506.) Roberson subsequently filed a writ petition contesting the defect in the city council hearing notice. (*Id*. at p. 1504.) Roberson argued he was not in privity with Rialto Citizens because "he brought his petition 'in his own interest,' while Rialto Citizens challenged the project approvals on public interest grounds." (*Id*. at p. 1512.) However, Roberson's petition focused on "harm [to] the community" rather than harm to himself. (*Id*. at pp. 1512–1513.) Accordingly, the court concluded "Roberson ' " ' "had an *identity or community of interest* with, and adequate representation by" ' " ' Rialto Citizens on his defective notice claim, both during the July 2008 city council hearings and in the *Rialto Citizens* action." (*Id*. at p. 1513.) Accordingly, when an alleged harm impacts the public rather than a specific entity, the privity analysis must focus on the "community of interest" rather than the relationship between the parties. To this end, we find *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202 (*Assn. of Irritated Residents*), the case relied upon by appellants, distinguishable. While that case applied a more rigid interpretation of privity, it relied upon cases involving specific harm to an entity, not a

12

public harm.[1]  (*Id.* at p. 1232, citing *Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 86 [action for personal injuries caused by asbestos exposure] & *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 339 [prosecution for indecent exposure].)

This case raises issues of harm to the community—namely, the detrimental impact to neighborhood supermarkets caused by having one located in a large commercial area. Despite their claims of personal harm, appellants do not allege any such harm apart from that incurred by the community.  Likewise, Sierra Club and SCCA brought their petition on behalf of its members who are part of the community.  Within this framework, appellants' and Sierra Club's and SCCA's " ' "relationship to the subject matter of the litigation" ' " is identical.  (*Castillo v. Glenair, Inc.*, *supra*, 23 Cal.App.5th at p. 277, italics omitted.)

Nor have appellants asserted their interest was not adequately represented in the *Sierra Club* litigation.  (See, e.g., *Assn. of Irritated Residents*, *supra*, 11 Cal.App.5th at p. 1233 [presumed common interests "effectively abdicated by lack of vigor in representation" because Sierra Club failed to timely appeal]; *Castaic Lake*, *supra*, 180 Cal.App.4th at p. 231 [statement that environmental entity lacked funds to challenge the EIR "display[ed] an 'abdication of the role of public agent' [citation] and an abandonment of 'its intention to represent the interests of the general public' "].)  Barring such evidence, we must assume Sierra Club and SCCA diligently litigated their petition and made an informed decision not to pursue the General Plan consistency argument. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286 ["The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of

---

[1] In addition, the petitioners in *Assn. of Irritated Residents* submitted declarations indicating they were unaware of the prior action and had no reasonable expectation of being bound to that action, and Sierra Club failed to appeal the judgment due to a " 'clerical error.' "  (*Assn. of Irritated Residents, supra*, 11 Cal.App.5th at pp. 1232–1233.)  The record does not suggest such evidence exists in this matter.

13

affirmance."].)  Accordingly, we find appellants in privity with the petitioners in the *Sierra Club* action.

### 2. Public Policy Exception

Finally, appellants argue this court should consider their challenge because it raises a question of law regarding statutory interpretation.  Even if the elements of res judicata are met, the California Supreme Court has held " 'when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed.' " (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 64.)  But in this instance, appellants are not asserting a question of law regarding statutory interpretation.  Rather, they seek interpretation of an ordinance *as it applies* to the Project approval.  Such a claim inherently requires the court to consider the facts and circumstances surrounding the Project.  (See *Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 327.)

Accordingly, appellants' petition is barred by res judicata.  Even assuming appellants' petition is not barred by res judicata, we cannot conclude no reasonable person could have found the Project consistent with the General Plan and Policy LU-7.[2]

---

[2] The parties also dispute whether appellants' petition is barred by the 90-day statute of limitations in Government Code section 65009.  In arguing the 90-day limitations period bars appellants' petition, the City relies on *Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, *Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist.* (2012) 206 Cal.App.4th 1036, and *City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713.  However, none of these cases are analogous because they involve initial approvals upon which later actions were based.  (See *Honig*, at p. 528 [obtained variance and then obtained building permit consistent with that variance]; *Van de Kamps*, at pp. 1047–1048 [resolution approving project triggered statute of limitations rather than date lease was executed]; *Chula Vista*, at pp. 1720–1721 [same].)  Here, however, the initial city council approvals were vacated by this court and the City was required to reapprove the EIR and Project.  Accordingly, we question whether those initial approvals could be considered a "final adjudicatory administrative decision." (*County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1327, italics omitted.)  However, we need not resolve this dispute in light of our other holdings herein.

14

**B.** *Project Consistency with Policy LU-7*

Appellants contend the City erroneously concluded the Project was consistent with Policy LU-7. Specifically, they allege no reasonable person would find such consistency because the evidence demonstrates the Project would not be "neighborhood-serving" and would likely result in the closure of existing neighborhood-serving markets. We disagree.

### 1. Standard of Review

"Under the Government Code, every county and city is required to adopt ' "a comprehensive, long-term general plan for the physical development of the county or city . . . ." (Gov. Code, § 65300.) . . . " '[T]he propriety of virtually any local decision affecting land use and development depends upon consistency with the applicable general plan and its elements.' [Citation.]" [Citation.]' [Citation] [¶] ' " 'An action, program, or project is consistent with the general plan if, considering all its aspects, it will further the objectives and policies of the general plan and not obstruct their attainment.' [Citation.]" [Citation.] State law does not require perfect conformity between a proposed project and the applicable general plan . . . .' " (*The Highway 68 Coalition v. County of Monterey* (2017) 14 Cal.App.5th 883, 896.)

" 'A city's findings that the project is consistent with its general plan can be reversed only if it is based on evidence from which no reasonable person could have reached the same conclusion. [Citation.]' [Citation.] Thus, the party challenging a city's determination of general plan consistency has the burden to show why, based on all of the evidence in the record, the determination was unreasonable." (*Pfeiffer v. City of Sunnyvale City Council* (2011) 200 Cal.App.4th 1552, 1563; *The Highway 68 Coalition v. County of Monterey*, *supra*, 14 Cal.App.5th at p. 896.)[3]

---

[3] Appellants appear to argue different standards apply to this review, with some courts applying a "reasonable person" standard and some an "abuse of discretion" standard. We find no meaningful distinction between these two standards as they are applied to such reviews. (See *Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 221 Cal.App.4th 102, 120 [" 'A court abuses its discretion if its ruling is " 'so irrational or arbitrary that no reasonable person could agree with it.' " ' "].)

## 2. Analysis

The City's General Plan sets forth various land use policies designed to support its general land use goals, including to "Promote a balanced land use program and increase the ability of people to live and work in the city." The General Plan lists 37 policies to support these goals. Policy LU-7 articulates a policy to "Encourage new neighborhood commercial facilities and supermarkets to be located to maximize accessibility to all residential areas." The General Plan states: "The intent [of Policy LU-7] is to ensure that convenience shopping facilities such as supermarkets and drugstores are located close to where people live and facilitate access to these on foot or bicycles. Also, because [the City's] residential population can support only a limited number of supermarkets, this policy will encourage dispersion of supermarkets rather than their clustering in a few locations." (Italics omitted.)

The parties have a fundamental disagreement regarding whether Policy LU-7 requires the Project to be "neighborhood-serving" or just "located to maximize accessibility to all residential areas." Nothing in the text of Policy LU-7 employs the phrase "neighborhood-serving" and we believe appellants' interpretation overemphasizes the word "neighborhood" to the detriment of the surrounding text. Policy LU-7 expressly encourages supermarkets "to be located to maximize accessibility to all residential areas." But this phrase should be interpreted in accordance with the explanatory text. (*Woodland Park Management., LLC v. City of East Palo Alto Rent Stabilization Bd*. (2010) 181 Cal.App.4th 915, 920 [" 'The primary duty of a court when interpreting a statute is to give effect to the intent of the Legislature, so as to effectuate the purpose of the law.' "].) When Policy LU-7 and the explanatory text are read together, the general goal of Policy LU-7 is to "maximize access" to supermarkets, such as by (1) locating supermarkets in proximity to where people live, (2) supporting various modes of transportation to access these supermarkets, and (3) encouraging dispersion of supermarkets. Accordingly, the key question is whether the Project would generally increase or decrease supermarket access for City residents.

16

Appellants first argue the Project would result in the closure of Pacific Market, a then-existing neighborhood market, because the region can only support a finite number of supermarkets. However, closure of a supermarket would only be relevant under Policy LU-7 if it impacted residents' access to supermarkets. On this point, the City offered evidence indicating its residents' access to supermarkets has not been and would not be impacted. The initial EIR concluded if Pacific Market closed, then by 2016 it anticipated sufficient demand for the space to be retenanted as a grocery store. Pacific Market did, in fact, close during the course of this litigation. And, as predicted, in 2014 that space was retenanted as a "Walmart Neighborhood Market." Accordingly, the record suggests the Project has not impacted the number of "neighborhood" supermarkets in the City. While appellants cite to their expert report that opines the Project will trigger at least one store closure, it is unclear how such closure would impact residents' access to supermarkets.

Appellants next contend the Project is in an isolated location, zoned for regional commercial land use, and thus cannot serve neighborhood population centers as intended by Policy LU-7. Evidence submitted in 2010 noted only 2,814 people live within one mile of the Project as opposed to 12,603 people who live in proximity to Pacific Market. However, the record also indicates the Project is in a designated "new growth area." Additional housing units are planned in the area surrounding the Project. The City further noted southwest Santa Rosa lacked supermarkets, and it anticipated the Project would also serve those areas and Cotati. And the isolated location arguably satisfies Policy LU-7's guidance that supermarkets be "dispersed" as there are no other existing grocery stores within a one-mile radius of the Project. Moreover, recreational facilities, a trail system, and a bicycle circulation system are planned as part of the area's growth strategy. The Project would include bicycle storage and enhanced pedestrian facilities to connect to these new systems.

Finally, the parties dispute the usefulness of the Project's 24-hour operations. While appellants argue two 24-hour supermarkets already exist, the EIR indicates the Project may be a closer option to some residents than those other supermarkets.

17

The parties have identified contradictory evidence on how the Project impacts supermarket access. But it is not our task to resolve such conflicts. Rather, the sole question is whether, "based on all of the evidence in the record," " 'no reasonable person could have reached the same conclusion' " as the trial court. (*Pfeiffer v. City of Sunnyvale City Council*, *supra*, 200 Cal.App.4th at p. 1563.) Here, the record shows the Project is in a new growth area with increasing residential communities, it is providing 24-hour operations, and is located at least a mile from the next closest supermarket. The record also shows the current residential community surrounding the Project is likely insufficient to support the Project and the Project may place financial stress on other supermarkets in the City. Considering the evidence as a whole, the trial court's decision was not palpably unreasonable, and thus did not exceed the City's " 'broad discretion.' " (*Ibid*.)

## III.  DISPOSITION

The judgment is affirmed. Defendant City of Rohnert Park may recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Margulies, J.

We concur:


_____
Humes, P.J.


_____
Banke, J.

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NANCY ATWELL et al., | A151896, A153011 |
|     Plaintiffs and Appellants, | |
| v. | (Sonoma County<br>Super. Ct. No. SCV256891) |
| CITY OF ROHNERT PARK, | |
|     Defendant and Respondent; | ORDER CERTIFYING OPINION<br>FOR PARTIAL PUBLICATION AND<br>MODIFYING OPINION |
| WAL-MART STORES, INC., | |
|     Real Party in Interest and<br>    Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:

The opinion in the above-entitled matter filed on September 20, 2018, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports. Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

It is further ordered that the opinion be modified as follows:

1. In the title, list Wal-Mart Stores, Inc. as "Real Party in Interest and Respondent."

2. On page 18, part III., in the citation at the end of the paragraph add "(5)," so the citation reads:

(Cal. Rules of Court, rule 8.278(a)(1), (2), (5).)

There is no change in the judgment.

Dated:

_____
Humes, P.J.

Trial Court:   Sonoma County Superior Court

Trial Judge:   Hon. Rene A. Chouteau

Counsel:

Shore, McKinley & Conger, LLP, Brett S. Jolley for Plaintiffs and Appellants.

Burke, Williams & Sorensen, LLP, Michelle Marchetta Kenyon and Nicholas J. Muscolino for Defendant and Respondent City of Rohnert Park.

Morgan, Lewis & Bockius, LLP, Rollin B. Chippey and Deborah E. Quick for Real Party in Interest and Respondent Wal-Mart Stores, Inc.