ELIA, ACTING P. J.
*482 *430 The Alliance of Concerned Citizens Organized for Responsible Development (ACCORD) filed a petition for writ of mandate and complaint for injunctive relief (petition) against the City of San Juan Bautista (City) and its city council (City Council) (together, respondents) to challenge the approval of a proposed project that consisted of a fuel station, convenience store, and quick serve restaurant on The Alameda near the intersection of State Route (SR) 156 and the adoption of a mitigated negative declaration (MND) for the project. Among other things, the petition sought to force respondents to vacate project approvals and compel the preparation of an Environmental Impact Report (EIR) under the California Environmental Quality Act (CEQA) ( Pub. Resources Code, § 21000 et seq. ).[1]
On March 14, 2016, the trial court granted a so-called "Peremptory Writ of Mandate of Interlocutory Remand for Reconsideration of Potential Noise Impacts" (March 2016 decision), which required respondents to set aside the resolutions, reconsider the significance of the project's potential noise impacts, take further action consistent with CEQA, and file a return to the writ. ACCORD did not appeal from that decision. It now appeals from the so-called "Final Judgment on Petition for Writ of Mandamus" subsequently filed on December 12, 2016 (December 2016 decision), which determined that respondents' supplemental return complied with the peremptory writ and with CEQA as directed.
On appeal, ACCORD argues that (1) the City was required to prepare an EIR because there was substantial evidence in the record supporting a fair argument that the proposed project may have significant, unmitigated traffic and noise impacts and that (2) the project violated the City's municipal code governing "formula retail businesses."
This court requested supplemental briefing to determine (1) whether the March 14, 2016 decision-which resolved all issues raised by the petition, granted a peremptory writ, and required a return-was in fact the final judgment, (2) whether the December 2016 decision was an order after judgment, and (3) the proper scope of appellate review. We now conclude that the March 2016 decision was the final judgment and the December 2016 decision was a postjudgment order. We consider ACCORD's contentions *431 insofar as they are cognizable in this appeal and find them meritless. Accordingly, we affirm the December 2016 decision. *483 I
Administrative and Procedural History
Harbhajan Dadwal (Dadwal), the real party in interest (RPI), filed an application for informal project review.
An Initial Study and Mitigated Negative Declaration (IS/MND), dated "January 2014," was prepared for the City concerning the proposed project.
A notice of intent to adopt a mitigated negative declaration (MND) was filed on January 14, 2014.
By resolution adopted on February 4, 2014 (Resolution 2014-04), the City's planning commission (Planning Commission) approved Dadwal's application for a design review permit (Design Review Project No. DR 2014-101) and his application for a conditional use permit (CUP 2014-101), subject to certain conditions and mitigation measures. By letter dated February 11, 2014, Leal Vineyards, Inc. appealed the Planning Commission's approvals.
A second IS/MND, dated July 31, 2014, concerning the project was prepared for City.
A comment letter received from the California Department of Transportation (Caltrans) on September 9, 2014 offered two comments. The first comment concerned "the need for an eastbound right turn channelization/turning lane" for traffic entering SR 156 from The Alameda. Caltrans stated in the letter: "Considering the speeds on SR 156 and the fact that this project will essentially double the amount of vehicle slowing in the through lane to navigate the turn (from existing 55 to 99 trips), these impacts are project-specific and should be mitigated prior to opening day of the project. This improvement is important for safety of the intersection since serious rear-end collisions can occur under these circumstances." The second comment concerned the requirement of an encroachment permit. Caltrans's letter explained that "[a]ny work within the State right-of-way will require an encroachment permit issued from Caltrans." It stated that "[d]etailed information such as complete drawings, biological and cultural resource findings, hydraulic calculations, environmental reports, traffic study, etc., may need to be submitted as part of the encroachment permit process."
Another notice of intent to adopt an MND was filed on October 14, 2014.
*432 By resolution adopted on November 18, 2014 (Resolution 2014-43), the City Council (1) made findings concerning CEQA, the second IS/MND, and the project and (2) approved the second IS/MND and the mitigation monitoring program. By a second resolution adopted on November 18, 2014 (Resolution 2014-44), the City Council (1) denied the appeal of Leal Vineyards, Inc., (2) approved the Planning Commission's approvals of Dadwal's applications for a conditional use permit and a design review permit, and (3) approved the project, subject to the conditions and mitigation measures imposed by the Planning Commission in its Resolution 2014-04, Exhibit C. In its second resolution, the City Council also made CEQA and project findings and approved conditions of project approval.
A notice of determination was filed on November 19, 2014.
On December 19, 2014, ACCORD filed its petition. It described the proposed project as follows: "[A]n ARCO gas station including 6 gas pumps, 12 fuel dispensing stations, a 2,980 square foot convenience store, and a 3,342 square foot fast food restaurant to be illuminated with lighted signs and open from 5 a.m. until 11 p.m. every day with daily truck deliveries."
The petition alleged multiple CEQA violations including that the City violated CEQA by not preparing an EIR because *484 construction and operation of the project would cause significant environmental impacts. It also alleged that substantial evidence in the record showed that the project conflicted with the City's general plan and that in approving the project, the City violated state planning and zoning law, its own zoning code, and its municipal code provision applicable to formula retail or restaurant businesses (San Juan Bautista Mun. Code, § 11-04-110).[2]
The petition sought a writ of mandate compelling the City to (1) vacate and set aside its 2014 resolution approving the project (Resolution 2014-44), (2) comply with CEQA, state planning and zoning law and its own general plan and municipal code, and (3) suspend all activity under the resolution that could affect the environment until such compliance. It also sought an injunction prohibiting the City and the RPI from "taking any action to implement or enforce the Resolution, including any action to begin grading or construction of the Project."
*433 Hearings were held on the petition on February 8, 2016 and February 22, 2016. After the hearings, the court issued the March 2016 decision, which had been prepared by attorneys for the RPI.
The March 2016 decision indicated the trial court determined that the issue of potential noise impacts was severable pursuant to section 21168.9 and that the project and the challenged actions of respondents were otherwise "in compliance with CEQA." The decision found in favor of respondents and the RPI on all other "issues raised in the Petition."
The March 2016 decision compelled respondents to set aside Resolutions 2014-43 and 2014-44, and it directed respondents to reconsider the noise impacts of the proposed project, to determine whether any significant noise impacts could be mitigated to less than significant levels, to adopt any appropriate and feasible mitigation measures, and to adopt the appropriate environmental document or take other appropriate action consistent with CEQA. The decision also prohibited respondents from permitting, and the RPI from undertaking, any project construction activities that could result in any change or alteration to the physical environment until the resolutions had been "reconsidered" and "brought ... into compliance with CEQA."
The March 2016 decision directed the City to take the following action: "CITY shall undertake such further studies and proceedings as may be necessary and appropriate to evaluate and consider the proposed Project's noise impacts on the environment, determine whether any such impacts that may be significant can be mitigated to less than significant levels, and if appropriate and feasible, adopt mitigation measures. Such compliance may take the ultimate form of adoption of a negative declaration, [an MND], [a] focused EIR, rejection of any of the above, or such other action consistent with CEQA as may be appropriate." The City was also directed to "comply with all notice and procedural requirements of CEQA, including an opportunity for public review, comment, and a hearing on any further action proposed by [the City]." It ordered respondents to file a return to the writ no later than October 10, 2016.
Respondents' supplemental return to the writ stated that respondents had filed a *485 return to the writ prior to the return date of October 10, 2016 and that the supplemental return had been filed "to advise the court that the Project was approved after a public hearing on October 18, 2016." The supplemental return stated: "On April 19, 2016, the Respondents adopted Resolutions [sic ] 2016-21, setting aside Resolutions 2014-43 and 2014-44, which approved the Project. A new noise analysis for the project was prepared by Charles M. Salter Associates Inc. and completed on April 18, 2016. A new [IS/MND] was prepared, by Hatch, Mott, and McDonald on July 11, 2016, which *434 incorporated the new noise analysis. The matter was fully and legally noticed and full rights were given by the public to participate in the process. After hearing all information presented by the public, the City Council at the hearing on appeal on November 18, 2014, after having reviewed all materials included with the agenda packet, heard and considered all comments and materials made and submitted by Petitioner, Applicant, staff, and other interested parties approved the project and adopted Resolutions 2016-47 and 2016-48 approving the Project." The City requested entry of final judgment.
ACCORD filed its opposition and objections to the supplemental return and proposed final judgment. It argued that respondents' supplemental return did not demonstrate compliance with CEQA or the peremptory writ and that adoption of an MND was an abuse of discretion. ACCORD maintained that there was a fair argument that the project could potentially result in adverse environmental noise impacts and therefore, preparation of an EIR was required. The RPI filed a reply to ACCORD's opposition and objections.
The December 2016 decision stated that "at the February 22, 2016 hearing[, the trial court had] ruled in favor of RPI and Respondent on all matters presented by the Petitioner except for the issue of whether the project would produce noise impacts sufficient to produce an EIR." It recited that "[p]ursuant to this Court's Peremptory Writ, Respondent[s] set aside Resolutions 2014-43 and 2014-44 on April 19, 2016, and prepared a new noise analysis utilizing the traffic data from the traffic report in the previously adopted [MND]. The new noise analysis was prepared by Charles M. Salter Associates, Inc. and found the Project would not produce significant noise impacts, with mitigation measures. ... A Revised [IS/MND] ... was prepared by Hutch Mott MacDonald on July 11, 2016 which incorporated the new noise analysis and mitigation measures."
The December 2016 decision stated that "[i]n compliance with the terms of the Peremptory Writ, Respondent filed a Return to the Writ on October 10, 2016 stating that the Project was set for hearing on October 18, 2016 and that Respondent would inform the Court as to the action taken in that hearing via a supplemental return." It also recited: "After hearing and considering comments and materials submitted by the public, the Petitioner, the Applicant, staff, and other interested parties, and after reviewing all materials included in the staff report and agenda packet at the public hearing before the City Council of San Juan Bautista on October 18, 2016, the City Council approved the project and adopted Resolutions 2016-47 and 2016-48. Resolution 2016-48 served to approve the project with conditions and appropriate mitigation measures[ ] and deny the appeal of the project, and Resolution 2016-47 served to adopt the Revised [IS/MND]."
*435 The December 2016 decision stated that respondents had filed a supplemental return demonstrating compliance with the peremptory writ and CEQA. Although the *486 court had already resolved the petition's allegations and granted a peremptory writ, it ostensibly "denied" ACCORD's petition for writ of mandamus and entered "[j]udgment" in favor of respondents and the RPI "in all matters." Attached as exhibits to the December 2016 decision were the new noise analysis prepared for the City, dated April 18, 2016, and the City's new resolutions (Resolutions 2016-47 and Resolution 2016-48).[3]
By notice of appeal filed on February 17, 2017, ACCORD appeals from the December 2016 decision.
II
Cognizable Contentions on Appeal
This court directed the parties and the RPI to address in supplemental briefing the following issues: (1) whether the March 2016 decision was the final judgment despite its label; (2) whether the December 2016 decision was a postjudgment order despite its label; and (3) whether ACCORD's contentions had been forfeited and are not cognizable on this appeal except insofar as they relate to whether the trial court erred in determining that respondents fully complied with its March 2016 decision.[4]
A. Grant of the Peremptory Writ was the Final Judgment for Appeal Purposes
"The right to appeal is wholly statutory. [Citation.]" ( Dana Point Safe Harbor Collective v. Superior Court (2010) 51 Cal.4th 1, 5, 118 Cal.Rptr.3d 571, 243 P.3d 575.) In general, a civil appeal may be taken "[f]rom a judgment, except an interlocutory judgment." ( Code Civ. Proc., § 904.1, subd. (a)(1).) An appeal may also be taken from "an order made after a *436 judgment made appealable by" Code of Civil Procedure section 904.1, subdivision (a)(1). ( Code Civ. Proc., § 904.1, subd. (a)(2).)
In general, "[a] judgment is the final determination of the rights of the parties in an action or proceeding." ( Code Civ. Proc., § 577, italics added.) Likewise, "[a] judgment in a special proceeding is the final determination of the rights of the parties therein."[5] ( Code Civ. Proc., § 1064 ; see Code Civ. Proc., § 1109.) Writs of mandamus[6] are "special proceedings of a *487 civil nature" governed by provisions in Part 3 of the Code of Civil Procedure. (See Code Civ. Proc., § 1084 et seq. ; see also Dhillon v. John Muir Health , supra , 2 Cal.5th at p. 1115, 218 Cal.Rptr.3d 119, 394 P.3d 1048.)
"Under the one final judgment rule, ' "an appeal may be taken only from the final judgment in an entire action." ' [Citation.] ' "The theory [behind the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." ' [Citations.]" ( In re Baycol Cases I & II (2011) 51 Cal.4th 751, 756, 122 Cal.Rptr.3d 153, 248 P.3d 681.)
"It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." ( Lyon v. Goss (1942) 19 Cal.2d 659, 670, 123 P.2d 11 ; accord, Griset v. Fair Political Practices Com'n (2001) 25 Cal.4th 688, 698-699, 107 Cal.Rptr.2d 149, 23 P.3d 43 ( Griset ).) "[A] judgment is final, and therefore appealable, ' " 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " ' [Citation.]" ( Dhillon v. John Muir Health , supra , 2 Cal.5th at p. 1115, 218 Cal.Rptr.3d 119, 394 P.3d 1048.) For example, "[a] decree in equity which is denominated 'interlocutory' and directs a further hearing for certain purposes, may make so complete and final an adjudication of all issues of fact and law as to constitute a 'final judgment' within the meaning of that term as used in the statutes concerning appeals." ( Lyon v. Goss , supra , 19 Cal.2d at p. 669, 123 P.2d 11.)
*437 A judgment labeled "interlocutory" nevertheless may be final for purposes of appeal if it is a final determination of the parties' rights. In Eldridge v. Burns (1978) 76 Cal.App.3d 396, 142 Cal.Rptr. 845, the trial court issued a decision labeled " 'Interlocutory Judgment' " ( id . at p. 402, 142 Cal.Rptr. 845 ) which expressly stated that "[t]his is an interlocutory judgment and the court retains jurisdiction to resolve disputes between [the parties] ...." ( Ibid ., fn. 1.) The appellate court observed that "[t]he mere fact that other proceedings were deemed necessary by the court to carry the judgment into effect did not render the judgment interlocutory rather than final." ( Id . at p. 405, 142 Cal.Rptr. 845.) It concluded that the so-called interlocutory judgment was an appealable final judgment because "there was nothing further in the nature of judicial action on the part of the court essential to a final determination of the asserted rights of the respective parties" in that "[t]hose rights were fully established by the judgment." ( Ibid . )
Contrariwise, an order labeled a " 'final judgment' " may not be a final judgment. "[N]o effect can or should be given to [a final judgment] label if the judgment does not in fact conclude matters between the parties. [Citation.]" ( Jackson v. Wells Fargo Bank (1997) 54 Cal.App.4th 240, 244, 62 Cal.Rptr.2d 679 ].) "It is the substance and effect of the court's order or judgment and not the label that determines whether or not it is appealable. [Citation.]" ( *488 Art Movers, Inc. v. Ni West, Inc. (1992) 3 Cal.App.4th 640, 645, 4 Cal.Rptr.2d 689.)
"In its most fundamental sense, 'finality' is an attribute of every judgment at the moment it is rendered; indeed, if a judicial determination is not immediately 'final' in this sense it is not a judgment, no matter what it is denominated. The Legislature has incorporated this meaning of finality into the very definition of a judgment: 'A judgment is the final determination of the rights of the parties in an action or proceeding.' ( Code Civ. Proc., § 577, italics added.)" ( Sullivan v. Delta Air Lines, Inc. (1997) 15 Cal.4th 288, 304, 63 Cal.Rptr.2d 74, 935 P.2d 781.) "Finality in this sense not only makes a judicial determination a judgment, it also makes that judgment appealable. ... 'A judgment that leaves no issue to be determined except the fact of compliance with its terms is appealable.' [Citation.]" ( Ibid . )
As indicated, "[a] judgment in a special proceeding is the final determination of the rights of the parties therein" ( Code Civ. Proc., § 1064 ), and writs of mandamus are "special proceedings of a civil nature." (See Code Civ. Proc., § 1084 et seq. ; see also Dhillon v. John Muir Health , supra , 2 Cal.5th at p. 1115, 218 Cal.Rptr.3d 119, 394 P.3d 1048.) A writ of mandate "may be either alternative or peremptory." ( Code Civ. Proc., § 1087.) An alternative writ of mandate "command[s] the party to whom it is directed immediately after the receipt of the writ, or at some other specified time, to do the act required to be *438 performed, or to show cause before the court at a time and place then or thereafter specified by court order why he has not done so." ( Ibid . ) In contrast, a peremptory writ of mandate commands a party to do the act required. ( Ibid . )
Where a petitioner seeks a writ of mandate, statutory law allows a peremptory writ to be issued in the first instance "if the application is upon due notice and the writ is allowed." ( Code Civ. Proc., § 1088.) Thus, a peremptory writ is either preceded by issuance of an alternative writ or issued in the first instance.[7] (See Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2017) ¶ 20:210, p. 20-24; see also id ., ¶ 18:262, p. 18-37.)
In general, "[w]hen the trial court issues its judgment granting a peremptory writ, the respondent has two *489 choices: to appeal that judgment or to comply with it." ( Los Angeles Intern. Charter High School v. Los Angeles Unified School Dist. (2012) 209 Cal.App.4th 1348, 1354, 147 Cal.Rptr.3d 757.) But if a writ petition has been joined with other causes of action and a decision leaves substantive issues or causes of action to be resolved in future proceedings, there may not be a final judgment yet. (See Griset , supra , 25 Cal.4th at pp. 696-697, 107 Cal.Rptr.2d 149, 23 P.3d 43 ; see also id . at p. 699, 107 Cal.Rptr.2d 149, 23 P.3d 43 ["denial of plaintiffs' petition for a writ of mandate disposed of all issues in the action" and was a final judgment]; Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725, 743, 29 Cal.Rptr.2d 804, 872 P.2d 143 ["an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining"].) *439 The grant of a peremptory writ "may include a return date as a technique for ensuring compliance and closure." (Cal. Judges Benchbook: Civ. Proc. After Trial (CEJR 2017) Other Writ Proceedings in Superior Court, § 5.27, p. 353.) Although also called a "return," the return to a peremptory writ is different from a return to an alternative writ in that its purpose is to ensure that respondent took the actions required by the writ. (See 1 Cal. Civ. Writ Practice (Cont. Ed. Bar 4th ed. 2018) §§ 8.2, 9.42, 10.3-10.9, pp. 8-4, 9-17, 10-2 to 10-5; Los Angeles Intern. Charter High School v. Los Angeles Unified School Dist. , supra , 209 Cal.App.4th at p. 1355, 147 Cal.Rptr.3d 757.) "Generally, the return to the peremptory writ will take one of two forms: that respondent has complied or that it has appealed or otherwise has grounds not to have complied." (Asimow et al., Cal. Practice Guide: Administrative Law (The Rutter Group 2017) ¶ 21:280, p. 21-35.) The fact that "there are additional proceedings involving the return on the [peremptory] writ does not change the finality of the judgment issuing the writ. [Citation.] The order following the hearing into the adequacy of [a respondent's] return on the writ is appealable as an order enforcing the judgment. [Citations.]" ( Los Angeles Intern. Charter High School v. Los Angeles Unified School Dist. (2012) 209 Cal.App.4th 1348, 1354-1355, 147 Cal.Rptr.3d 757.) "On appeal from an order discharging a [peremptory] writ, the issue is whether the trial court erred in ruling that the respondent ... complied with the writ." ( Id . at p. 1355, 147 Cal.Rptr.3d 757.)
We note that the confusingly titled March 2016 decision ("Peremptory Writ of Mandate of Interlocutory Remand ...") was prepared by the attorneys for the RPI. Its label is seemingly self-contradictory because an interlocutory remand is not a final judgment, whereas the grant of a peremptory writ is ordinarily a final judgment unless there remain undecided claims or pending causes of action (such as where there is a combined pleading and the entire controversy is not resolved). (See Griset , supra , 25 Cal.4th at p. 697, 107 Cal.Rptr.2d 149, 23 P.3d 43.) We now examine the substance and effect of the decision to determine whether it was the final judgment in this case.
The March 2016 decision disposed of all CEQA and non-CEQA issues raised by the petition and concluded that respondents had not complied with CEQA with respect to the potential noise impacts of the project. The decision was not tentative or partial. The March 2016 decision left for future determination only whether respondents had obeyed the peremptory writ, *490 and they were required to demonstrate their compliance by a return. The issue to be determined at a future hearing was whether respondents' new actions complied with the peremptory writ, which required reconsideration of the project's potential noise impacts and compliance with CEQA going forward. Of course, the petition did not raise any claim of error regarding those new actions. *440 But the March 2016 decision itself stated that it was not the final judgment in the case. It stated that following the return, the court would "conduct such further proceedings as are necessary and appropriate and determine whether to enter a final Judgment." It further declared: "Nothing contained herein shall be construed as a final Judgment for purposes of appellate review by any party to this action."
The parties have not directed us to any California case holding that the subjective intentions of the court or the parties as to the finality of a decree can trump its actual substance and effect for purposes of appeal. Although the March 2016 decision had the effect of sending the matter back to respondents for further action and thus could be regarded as a remand in the most general sense, its self-description as a nonappealable, interlocutory remand was not determinative.
The substance and effect of the March 2016 decision, which granted a peremptory writ, compel our conclusion that it was the final judgment for purposes of appeal. (See Griset , supra , 25 Cal.4th at p. 700, 107 Cal.Rptr.2d 149, 23 P.3d 43 ; see also Dhillon v. John Muir Health , supra , 2 Cal.5th at p. 1117 ; Public Defenders' Organization v. County of Riverside (2003) 106 Cal.App.4th 1403, 1410, 132 Cal.Rptr.2d 81 [where rights put at issue by petition for writ of mandate had been adjudicated, the issue "[w]hether the County [was] complying with that judgment [granting a petition for writ of mandate] is not relevant to whether the judgment is final and appealable."].) While a trial court has continuing jurisdiction to ensure compliance with a peremptory writ of mandate (see County of Inyo v. City of Los Angeles (1976) 61 Cal.App.3d 91, 95, 132 Cal.Rptr. 167 ; Code Civ. Proc., § 1097 ), the writ's validity is not at issue on appeal from an order enforcing the writ. (See Robles v. Employment Development Department (2015) 236 Cal.App.4th 530, 546, 186 Cal.Rptr.3d 707.) The reviewing court's focus is on a respondent's response to the grant of the writ and "the trial court's assessment of that response. [Citation.]" ( Ibid . )
In light of our conclusion, the December 2016 decision could not be the final judgment, regardless of its title. "[A]n order regarding adequacy of a return [is an order] relating to enforcement of a judgment" ( City of Carmel-By-The-Sea v. Board of Supervisors (1982) 137 Cal.App.3d 964, 971, 187 Cal.Rptr. 379 ), and it is appealable as an order after an appealable judgment. ( Ibid . ; see Ballona Wetlands Land Trust v. City of Los Angeles (2011) 201 Cal.App.4th 455, 464, fn. 2, 134 Cal.Rptr.3d 194 ( Ballona ); Code Civ. Proc., 904.1, subd. (a)(2) ; Leftridge v. City of Sacramento (1941) 48 Cal.App.2d 589, 595, 119 P.2d 390 [order discharging peremptory writ was an appealable postjudgment order].) Accordingly, despite its label, the December 2016 decision was actually an appealable postjudgment order ( Code Civ. Proc., § 904.1, subd. (a)(2) ), which is most reasonably construed as an order discharging the peremptory writ.
*441 B. Interlocutory Remands
ACCORD urges us to conclude that the March 2016 decision was an interlocutory remand order from which it could not appeal. ACCORD relies heavily on *491 Voices of the Wetlands v. State Water Resources Control Bd. (2011) 52 Cal.4th 499, 128 Cal.Rptr.3d 658, 257 P.3d 81 ( Voices ), a non-CEQA, administrative mandamus action ( Code Civ. Proc., § 1094.5 ). In Voices , the trial court ordered an interlocutory remand to a regional water board, requiring it to reconsider a finding. ( Voices , supra , 52 Cal.4th at pp. 511-513, 535, 128 Cal.Rptr.3d 658, 257 P.3d 81.) ACCORD has not shown by reference to the record that review by petition for writ of administrative mandamus was available to review respondents' challenged actions.[8] (See Code Civ. Proc., 1094.5, subd. (a).)
In Voices , "the administrative record did not support one finding by the agency in support of its issuance of a permit essential to the permittee's operations." ( Voices , supra , 52 Cal.4th at p. 535, 128 Cal.Rptr.3d 658, 257 P.3d 81.) The California Supreme Court concluded that the trial court could properly order a limited, prejudgment remand to allow the administrative agency to reconsider its findings that lacked sufficient evidentiary support and the agency could consider additional evidence upon remand. ( Id . at p. 526, 128 Cal.Rptr.3d 658, 257 P.3d 81 ; see id . at pp. 530, 128 Cal.Rptr.3d 658, 257 P.3d 81 ["no error in the trial court's use of an interlocutory remand to resolve perceived deficiencies" in regional water board's finding], 535 [trial court "acted properly by remanding to the agency for additional evidence and analysis"].)
In Voices , the Supreme Court stated that "properly understood and interpreted, subdivisions (e) and (f) of section 1094.5 impose no absolute bar on the use of prejudgment limited remand procedures such as the one employed here."[9] ( *492 Voices , supra , 52 Cal.4th at p. 526, 128 Cal.Rptr.3d 658, 257 P.3d 81.) The court disapproved two cases *442 ( Sierra Club v. Contra Costa County (1992) 10 Cal.App.4th 1212, 13 Cal.Rptr.2d 182 ; Resource Defense Fund v. Local Agency Formation Com. (1987) 191 Cal.App.3d 886, 236 Cal.Rptr. 794 ) to the extent they concluded that section 1094.5, subdivision (f), imposed a "blanket prohibition on the appropriate use, in an administrative mandamus action, of a prejudgment remand for agency reconsideration of one or more issues pertinent to the agency's [quasi-judicial] decision." ( Voices , supra , 52 Cal.4th at p. 529, 128 Cal.Rptr.3d 658, 257 P.3d 81.) The court also disapproved two other cases ( Ashford v. Culver City UnifiedSchool Dist. (2005) 130 Cal.App.4th 344, 29 Cal.Rptr.3d 728 and Newman v. State Personnel Bd. (1992) 10 Cal.App.4th 41, 12 Cal.Rptr.2d 601 ) to the extent that their analyses were inconsistent with its conclusions that "once the court has reviewed the administrative record, and has found it wanting, section 1094.5 does not preclude the court from remanding for the agency's reconsideration in appropriate proceedings that allow the agency to fill the evidentiary gap." ( Voices , supra , 52 Cal.4th at p. 535, 128 Cal.Rptr.3d 658, 257 P.3d 81.)
In a separate concurring opinion in Voices , Justice Werdegar, joined by Chief Justice Cantil-Sakauye, recognized the limited scope of the court's decision. ( Voices , supra , 52 Cal.4th at pp. 539-540, 128 Cal.Rptr.3d 658, 257 P.3d 81.) Both justices had concurred in the majority opinion. The concurring opinion stated that "the majority has no occasion here to consider whether a trial court may, similarly, order remand for reconsideration of an agency decision for compliance with CEQA without issuing a writ of mandate." ( Voices , supra , 52 Cal.4th at p. 539, 128 Cal.Rptr.3d 658, 257 P.3d 81.) It discussed section 21168.9, a CEQA provision that applies to CEQA challenges and requires a trial court to issue a peremptory writ if it finds that a public agency's finding or decision was made in violation of CEQA. ( Voices , supra , 52 Cal.4th at pp. 539-540, 128 Cal.Rptr.3d 658, 257 P.3d 81.) It observed that "CEQA contains its own detailed and balanced remedial scheme" ( id . at p. 540, 128 Cal.Rptr.3d 658, 257 P.3d 81 )
*443 and concluded that "the majority's analysis of the administrative mandate procedure in this non-CEQA case [did not] speak[ ] to the procedures to be followed when an agency's action is found to have violated CEQA."[10] ( Ibid . )
*493 The California Supreme Court has not decided the propriety of an interlocutory remand in CEQA cases. "A party may seek to set aside an administrative decision for failure to comply with CEQA by petitioning for either administrative mandamus ( Code Civ. Proc., § 1094.5 ) or traditional mandamus (Id. , § 1085). A petition for administrative mandamus is appropriate when the party seeks review of a 'determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency, on the grounds of noncompliance with [CEQA],' generally referred to as an 'adjudicatory' or 'quasi-judicial' decision. [Citations.] A petition for traditional mandamus is appropriate in all other actions brought 'to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with [CEQA]. [Citations.]"[11] ( Western States Petroleum Assn. v. Superior Court (1995) 9 Cal.4th 559, 566-567, 38 Cal.Rptr.2d 139, 888 P.2d 1268 ( Western States ).); see §§ 21168, 21168.5, 21168.7.)
In a writ proceeding under CEQA, a mandate order must "be made by the issuance of a peremptory writ of mandate specifying what action by the public agency is necessary to comply." (§ 21168.9, subd. (b), italics added.) Under section 21168.9, "[i]f a court finds ... that any determination, finding, or decision of a public agency has been made without compliance with this division, the court shall enter an order that includes one or more of the *444 following: [¶] (1) A mandate that the determination, finding, or decision be voided by the public agency, in whole or in part. [¶] (2) If the court finds that a specific project activity or activities will prejudice the consideration or implementation of particular mitigation measures or alternatives to the project, a mandate that the public agency and any real parties in interest suspend any or all specific project activity or activities, pursuant to the determination, finding, or decision, that could result in an adverse change or alteration to the physical environment, until the public agency has taken any actions that may be necessary to bring the determination, finding, or decision into compliance with this division. [¶] (3) A mandate that the public agency take specific action as may be necessary to bring the determination, finding, or decision into compliance with this division." (§ 21168.9, subd. (a)(1)-(3).)
The grant of writ relief made pursuant to section 21168.9 must "include only those mandates which are necessary to achieve compliance with [CEQA] and only those specific project activities in noncompliance with [CEQA]." (§ 21168.9, subd. (b).) The order must "be limited to that portion of a determination, finding, or decision or the specific project activity or activities found to be in noncompliance only if a court finds that (1) the portion or specific project activity or activities are severable, (2) severance will not prejudice complete and full compliance with this division, and (3) the court has not found the remainder of the *494 project to be in noncompliance with this division." (Ibid .)
The statute states that trial court must "retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with [CEQA]." (§ 21168.9, subd. (b), italics added.) "This statutory provision for the retention of jurisdiction reflects the rule that a court issuing a peremptory writ of mandate retains jurisdiction to determine the adequacy of the return and ensure full compliance with the writ. [Citations.]" ( Ballona, supra, 201 Cal.App.4th at p. 479, 134 Cal.Rptr.3d 194.)
While we question whether an interlocutory remand is permissible under section 21168.9, which requires relief (where warranted) by peremptory writ rather than by an alternative writ or order to show cause,[12] it is unnecessary to resolve the legal question here. As explained, in substance and effect, the *445 March 2016 decision was the final determination of the parties' rights-i.e., the final judgment, in this case. ( Code Civ. Proc., § 1064.)
C. Scope of Review and Cognizable Issues on Appeal
Code of Civil Procedure section 906 provides that "[u]pon an appeal pursuant to [s]ection 904.1 or 904.2, "the reviewing court may review the ... decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party ...." ( Code Civ. Proc., § 906.) But Code of Civil Procedure section 906 makes clear that "[t]he provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken."
"California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited. [Citations.]" ( Baycol, supra, 51 Cal.4th at p. 762, fn. 8, 122 Cal.Rptr.3d 153, 248 P.3d 681.) Since the March 2016 decision was actually an appealable final judgment, "it follows that it had to be timely appealed or the right to challenge its particulars [was] forever lost." ( Ibid . )
By failing to appeal from the March 2016 decision, ACCORD forfeited appellate review of the trial court's findings under section 21168.9 and its other CEQA and non-CEQA determinations, express or implied, in favor of respondents.[13] A "trial court's retained jurisdiction under Public Resources Code section 21168.9, subdivision (b) is limited to ensuring compliance with the peremptory writ of mandate." ( *495 Ballona , supra , 201 Cal.App.4th at p. 480, 134 Cal.Rptr.3d 194 ; see Code Civ. Proc., § 1097.) After considering a petitioner's CEQA challenges and "rendering a final judgment and peremptory writ of mandate, a trial court evaluating a return to the writ may not consider any newly asserted challenges arising from the same material facts in existence at the time of the judgment" because "[t]o do so would undermine the finality of the judgment." ( Ballona, supra, at p. 480, 134 Cal.Rptr.3d 194.)
We conclude that on appeal from the December 2016 decision, which is a postjudgment order, our review is limited to that decision. We lack jurisdiction to review the grant of the peremptory writ since it was the final judgment from which an appeal might have been taken. ( Code Civ. Proc., §§ 904.1, subd. (a)(1), 906, 1064.) Accordingly, ACCORD's present claims that an EIR
*446 was required to address the potentially significant traffic impacts of the project and that the project violates the substantive requirements of the City's municipal code governing formula retail businesses (see San Juan Bautista Mun. Code, §§ 11-04-110, 11-29-010) are not cognizable. We may review, however, ACCORD's contentions insofar as they assert that, due to the project's potential noise impacts, preparation of an EIR was necessary to comply with the peremptory writ.
D. Fairness and Due Process
ACCORD also asserts that it was "entitled to rely upon the trial court's characterization of its [March 14, 2016] order as an interlocutory remand" and urges this court to recognize that the order was "a non-appealable interlocutory remand order" as a matter of fundamental fairness. The cases cited by ACCORD are not on point or are distinguishable.
As we have discussed, Voices was not a CEQA case. (See Voices , supra , 52 Cal.4th at p. 539, 128 Cal.Rptr.3d 658, 257 P.3d 81 (conc. opn. of Werdegar, J.).) It did not consider whether an interlocutory remand is permissible under section 21168.9. Most relevant to this case, there was no occasion in Voices to consider whether the interlocutory remand order in that case was in fact a final judgment based on its substance and effect. "A decision, of course, is not authority for what it does not consider. [Citation.]" ( Mercury Ins. Group v. Superior Court (1998) 19 Cal.4th 332, 348, 79 Cal.Rptr.2d 308, 965 P.2d 1178 ; see People v. Gilbert (1969) 1 Cal.3d 475, 482, fn. 7, 82 Cal.Rptr. 724, 462 P.2d 580 ["It is axiomatic that cases are not authority for propositions not considered."].)
Schenck v. County of Sonoma (2011) 198 Cal.App.4th 949, 130 Cal.Rptr.3d 527 ( Schenck ), which is mentioned by ACCORD, involved a plaintiff's "appeal from a judgment in an action challenging the approval of a [development] project ... on grounds that the County of Sonoma failed to comply with [CEQA] before issuing [an MND]." ( Id . at p. 952, 130 Cal.Rptr.3d 527.) The plaintiff "challenged the County's compliance with CEQA and approval of the project by way of a petition for peremptory writ of mandate and injunctive relief filed in the trial court ...." ( Id . at p. 955, 130 Cal.Rptr.3d 527.) "[T]he trial court filed an order that found the County failed to furnish proper notice of the Board's intent to adopt the [MND] to the Bay Area Air Quality Management District ( [BAAQMD] )." ( Ibid . ) The trial court granted the petition, requiring a real party in interest "to provide adequate notice to the BAAQMD, with the 'results of such notice' to determine the 'further course of action' needed to 'cure the defects and ensure proper CEQA review of this project.' " ( Id . at p. 956, 130 Cal.Rptr.3d 527.) "The court retained jurisdiction over the *496 matter to ultimately determine the issue of the County's compliance with the notice provisions of CEQA." ( Ibid . ) *447 Schenck 's recitation of procedural history mentioned that the plaintiff had "filed an appeal from the trial court's order," which the appellate court had dismissed. ( Schenck , supra , 198 Cal.App.4th at p. 956, 130 Cal.Rptr.3d 527.) According to the opinion, "the County filed a 'Certificate of Compliance' ... on April 29, 2010, which informed the court 'of the County's timely and complete compliance' with the order to provide proper notice to the BAAQMD, and requested dismissal of the petition for writ of mandate with prejudice." ( Ibid . ) "The parties subsequently filed a stipulation that the County's Certificate of Compliance served as a return to the writ of mandate ( Code Civ. Proc., § 1108 ), and to entry of the trial court's prior order as a 'final, appealable judgment' in the case. Pursuant to the stipulation, on July 19, 2010, the trial court issued a final judgment in the terms of the prior order." ( Ibid ., italics added.)
On appeal in Schenck , the plaintiff sought to characterize "the trial court's order as 'an improper interlocutory remand,' and [the plaintiff] maintain[ed] that the court was 'required to set aside Project approval for failure to provide notice to a responsible agency.' " ( Schenck , supra , 198 Cal.App.4th at p. 960, 130 Cal.Rptr.3d 527.) The Court of Appeal, First District, Division 1, found "nothing in the trial court's order that contravened the remedial procedures sanctioned by CEQA" in section 21168.9. ( Id . at p. 961, 130 Cal.Rptr.3d 527.) The appellate court also determined that the plaintiff had "forfeited any objection to the form of relief" by failing to object in the trial court. ( Ibid . )
We see nothing in Schenck that supports ACCORD's current claim that fundamental fairness and due process require this court to reach its challenges to the March 2016 decision, which we have concluded was the final judgment, on appeal from the trial court's subsequent December 2016 decision, which we have concluded is a postjudgment order determining the adequacy of respondents' return to the peremptory writ. While the Court of Appeal, First District, may have dismissed the plaintiff's original appeal in Schenck , for a reason we might only surmise, Schenck contains no holding that supports ACCORD's fairness argument. An appellate decision is authority "only 'for the points actually involved and actually decided.' [Citations.]" ( Santisas v. Goodin (1998) 17 Cal.4th 599, 620, 71 Cal.Rptr.2d 830, 951 P.2d 399.)
ACCORD asserts that if this court recharacterizes the March 2016 decision as a final judgment, ACCORD would be deprived of "its due process rights to full judicial review" and that fundamental fairness requires this court to hear its appeal from that decision. It cites two cases to support those assertions.
In Adoption of Alexander S. (1988) 44 Cal.3d 857, 245 Cal.Rptr. 1, 750 P.2d 778 ( Alexander S. ), an adoption proceeding, a natural mother filed a petition *448 to withdraw consent to an independent adoption, which the trial court denied. ( Id . at pp. 859, 861, 245 Cal.Rptr. 1, 750 P.2d 778.) The mother did not appeal from that denial "within the limitations period of the California Rules of Court" and it became final. ( Id . at 859, 245 Cal.Rptr. 1, 750 P.2d 778.) The mother timely appealed from the subsequent denial of "her petition to declare a father-child relationship." ( Id . at p. 863, 245 Cal.Rptr. 1, 750 P.2d 778.)
On appeal from the subsequent denial of her petition to declare a father-child relationship in Alexander S. , the mother raised "her belated claims" regarding the denial of her petition to withdraw consent. ( *497 Alexander S. , supra , 44 Cal.3d at p. 863, 245 Cal.Rptr. 1, 750 P.2d 778.) "[O]n its own initiative and without notice to the parties," the appellate court treated the mother's belated claims as a petition for a writ of habeas corpus. ( Ibid . ) The appellate court "issued a writ of habeas corpus, ordered the trial court to vacate its judgment denying [the mother's] petition for withdrawal of consent" ( id . at pp. 863-864, 245 Cal.Rptr. 1, 750 P.2d 778 ), and denied the prospective adoptive parents' request to file a return to the writ. ( Id . p. 864, 245 Cal.Rptr. 1, 750 P.2d 778.)
On review in Alexander S. , the California Supreme Court determined that, since the mother had not appealed from the denial of her petition to withdraw consent, which was appealable, and did not file a petition for writ of habeas corpus in the appellate court, "[o]nce the Court of Appeal had addressed the issue of the father-child relationship, it should have stopped there and not addressed [the mother's] belated claims." ( Alexander S. , supra , 44 Cal.3d at p. 864, 245 Cal.Rptr. 1, 750 P.2d 778.) The court concluded that the appellate court had "erred in substituting habeas corpus relief for the available remedy of appeal" because "[i]t is well settled that 'habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment ....' ( In re Dixon (1953) 41 Cal.2d 756, 759, 264 P.2d 513.)" ( Id . at p. 865, 245 Cal.Rptr. 1, 750 P.2d 778.) The Supreme Court held that "habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment." ( Id . at pp. 867-868, 245 Cal.Rptr. 1, 750 P.2d 778.)
Alexander S. is not helpful to ACCORD. The case does not, as ACCORD suggests, stand for the proposition that due process is "a valid consideration in determining whether procedural irregularities affect appellate jurisdiction" or may "under certain 'special circumstances,' " render "appellate review ... proper regardless of the timeliness of the filing of a notice of appeal." When it mentioned "special circumstances" ( Alexander S. , supra , 44 Cal.3d at p. 865, 245 Cal.Rptr. 1, 750 P.2d 778 ), the Supreme Court was merely discussing the availability of habeas corpus relief and referring to the general rule that such relief is barred where a claim of error could have been, but was not, raised on direct appeal. (See *449 In re Reno (2012) 55 Cal.4th 428, 490-491, 146 Cal.Rptr.3d 297, 283 P.3d 1181 [ Dixon rule subject to four exceptions]; In re Harris (1993) 5 Cal.4th 813, 825, fn. 3, 829, 21 Cal.Rptr.2d 373, 855 P.2d 391.)
In Estate of Hanley (1943) 23 Cal.2d 120, 142 P.2d 423, the appellant, in her individual capacity, filed a notice of appeal from an order approving the "First Account and Report" in the administration of an estate, but she filed it "one day beyond the applicable statutory period" for filing a notice of appeal. ( Id . at p. 120, 142 P.2d 423.) The notice of entry of the order had misstated the date of filing, and an attorney acting for appellant in her separate capacity as executrix had served the notice upon appellant's counsel representing her in her individual capacity. ( Id . at pp. 120-121, 142 P.2d 423.) In addition, during a telephone conversation, the attorney acting for her as the executrix told her counsel representing her as an individual that "the date stated in the notice was correct and the time for appeal should be computed accordingly." ( Id . at p. 122, 142 P.2d 423.) The appellant opposed a motion to dismiss the appeal, asserting that "under appropriate circumstances, such as innocent and justifiable reliance upon misrepresentations, *498 one may be relieved from the effect of delay in filing a notice of appeal; or, adopting a different theory, the respondent whose misrepresentations were the cause of the delay may be estopped to take advantage of it by a motion to dismiss." ( Id . at p. 122, 142 P.2d 423.)
The California Supreme Court was not persuaded by that argument. It stated: "[I]t is immaterial whether the misrepresentations concerning the date upon which the order was filed were wilful or inadvertent, whether the reliance thereon was reasonable or unreasonable, or whether the parties seeking to dismiss are acting in good faith or not. It may be assumed that the appellant has presented grounds for relief which would be sufficient if relief could be granted. But the requirement as to the time for taking an appeal is mandatory, and the court is without jurisdiction to consider one which has been taken subsequent to the expiration of the statutory period. [Citations.]" ( Estate of Hanley , supra , 23 Cal.2d at pp. 122-123, 142 P.2d 423.) It further explained: "In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal [citation], even to relieve against mistake, inadvertence, accident, or misfortune [citations]. Nor can jurisdiction be conferred upon the appellate court by the consent or stipulation of the parties, estoppel, or waiver. [Citations.] If it appears that the appeal was not taken within the 60-day period, the court has no discretion but must dismiss the appeal of its own motion even if no objection is made. [Citations.]" ( Id . at p. 123, 142 P.2d 423.) The Supreme Court dismissed the appeal. ( Id . at p. 124, 142 P.2d 423.)
In dicta, the Supreme Court suggested that equitable relief from an untimely filing of an appeal from a judgment might be available where a party was prevented from timely appealing by another party's fraud or duress *450 or "circumstances over which he has no control." ( Estate of Hanley , supra , 23 Cal.2d at p. 124, 142 P.2d 423.) ACCORD relies on this language but overlooks a subsequent clarifying decision.
In Hollister Convalescent Hosp., Inc. v. Rico (1975) 15 Cal.3d 660, 125 Cal.Rptr. 757, 542 P.2d 1349, the Supreme Court made clear that the "notion of estoppel" has no "place in determining whether a timely notice of appeal has been filed within the jurisdictional period therefor." ( Id . at p. 674, 125 Cal.Rptr. 757, 542 P.2d 1349.) The court stated that "[t]he expiration of a jurisdictional period is not, and by its nature cannot, be affected by the actions of the parties." ( Ibid . ) It held that when a notice of appeal "has not in fact been filed within the relevant jurisdictional period-and when applicable rules of construction and interpretation fail to require that it be deemed in law to have been so filed-the appellate court, absent statutory authorization to extend the jurisdictional period, lacks all power to consider the appeal on its merits and must dismiss, on its own motion if necessary, without regard to considerations of estoppel or excuse." ( Ibid . )
This court is not changing the character of the March 2016 decision. We merely recognize its actual substance and effect as the final judgment. The December 2016 decision was mischaracterized as the final judgment.
III**
DISPOSITION
The December 12, 2016 order is affirmed.
WE CONCUR:
BAMATTRE-MANOUKIAN, J.
MIHARA, J.

All further statutory references are to the Public Resources Code unless otherwise specified. All references to "Guidelines" are to the state CEQA Guidelines implementing CEQA (Cal. Code Regs., tit. 14, § 15000 et seq. ) "[C]ourts should afford great weight to the Guidelines except when a provision is clearly unauthorized or erroneous under CEQA. [Citation.]" (Laurel Heights Improvement Assn. v. Regents of University of California (1988) 47 Cal.3d 376, 391, fn. 2, 253 Cal.Rptr. 426, 764 P.2d 278.)

The City's municipal code defines "[f]ormula retail or restaurant business development" to mean "a retail, restaurant, or fast-food business that is required by contractual or other arrangement to maintain standardized services, merchandise, menus, ingredients, food preparation, uniforms, decor, logos, architecture, signs, or similar features." (San Juan Bautista Mun. Code, § 11-29-010.)

By resolution adopted on October18, 2016 (Resolution 2016-47), the City Council approved a new IS/MND and a mitigation monitoring program. By a second resolution adopted on that same date (Resolution 2016-48), the City Council adopted CEQA and project findings, approved conditions of project approval, denied an appeal of the Planning Commission's approvals of the project, approved the Planning Commission's decision to approve applications CUP 2014-11 and DR 2014-11, and approved the project, subject to the conditions and mitigation measures imposed. Both resolutions contained a factual recital indicating that a new IS/MND had been prepared, which incorporated the new noise analysis.

On this court's own motion, we strike the "Declaration of Zachary Walton" filed on behalf of ACCORD on the same date as its supplemental briefing and the "Declaration of Cody Phillips" filed on behalf of the RPI as part of his supplemental brief. Both were filed without this court's permission and went beyond the request for supplemental briefing. Respondents join in the RPI's supplemental brief.

"[U]nless the statute creating the special proceeding prohibits an appeal, there is an appeal from a final judgment entered in a special proceeding. [Citation.]" (Knoll v. Davidson (1974) 12 Cal.3d 335, 343, 116 Cal.Rptr. 97, 525 P.2d 1273 [peremptory writ of mandate]; accord Dhillon v. John Muir Health (2017) 2 Cal.5th 1109, 1115, 218 Cal.Rptr.3d 119, 394 P.3d 1048.)

A "writ of mandamus may be denominated a writ of mandate." (Code Civ. Proc., § 1084.)

The issuance of an alternative writ of mandate contemplates responsive pleadings, including a return (by way of demurrer, a verified answer, or both) (Code Civ. Proc., § 1089 ; see id ., § 1089.5) and a reply (see In re Scott (1928) 205 Cal. 525, 526-527, 271 P. 906 ; see also Code Civ. Proc., § 1091 ; Hunt v. Mayor and Council of City of Riverside (1948) 31 Cal.2d 619, 623, 191 P.2d 426 [allegations of answer will be accepted as true if not controverted] ), and a hearing and possibly evidentiary proceedings (see Code Civ. Proc., §§ 1087 -1088, 1090, 1091, 1094 ; see also Gomez v. Superior Court (2012) 54 Cal.4th 293, 301, 142 Cal.Rptr.3d 808, 278 P.3d 1168 ). If a petitioner prevails on an alternative writ, the trial court grants a peremptory writ of mandate (see Code Civ. Proc., § 1095 ). When the respondent prevails, a court denies a peremptory writ and discharges the alternative writ. (See Cal. Civ. Writ Practice (Cont. Ed. Bar 4th ed. 2018) § 9.48, p. 9-18; Cal. Judges Benchbook: Civ. Proc. After Trial (2017 ed.) Other Writ Proceedings in Superior Court, § 5.26, p. 352) In the situation where a respondent performs the act required in the alternative writ before judgment, "the writ has accomplished the purpose of the mandamus proceedings and the petition should be dismissed as moot. [Citations.]" (Bruce v. Gregory (1967) 65 Cal.2d 666, 671, 56 Cal.Rptr. 265, 423 P.2d 193 ; see Environmental Protection Information Center, Inc. v. State Bd. of Forestry (1993) 20 Cal.App.4th 27, 28, 24 Cal.Rptr.2d 344 ["after an alternative writ of mandate is fully complied with by the respondent, the issuing court retains no continuing jurisdiction in such proceedings over the subject matter of the writ petition"].)

The inquiry in an administrative mandamus proceeding "extend[s] to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Ibid .)

Section 1094.5, subdivision (e), provides that "[w]here the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case." Section 1094.5, subdivision (f), states: "The court shall enter judgment either commanding respondent to set aside the order or decision, or denying the writ. Where the judgment commands that the order or decision be set aside, it may order the reconsideration of the case in light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law, but the judgment shall not limit or control in any way the discretion legally vested in the respondent." In Voices , the Supreme Court reasoned that "[o]n its face, subdivision (f) of section 1094.5 indicates the form of final judgment the court may issue in an administrative mandamus action" (Voices , supra , 52 Cal.4th at p. 526, 128 Cal.Rptr.3d 658, 257 P.3d 81 ) and that "nothing in subdivision (f) of section 1094.5 purports to limit procedures the court may appropriately employ before it renders a final judgment." (Ibid . ) The court construed subdivision (e) of section 1094.5 as "merely confirm[ing] that while, in most cases, the court is limited to the face of the administrative record in deciding whether the agency's decision is valid as it stands, in fairness, the court may consider, or may permit the agency to consider, extra-record evidence for a contrary outcome, if persuaded that such evidence was not available, or was improperly excluded, at the original agency proceeding. [Citations.]" (Voices , supra , 52 Cal.4th at p. 532, 128 Cal.Rptr.3d 658, 257 P.3d 81.) It determined that section 1094.5, subdivision (e) did not "prevent the court, upon finding that the administrative record itself lacks evidence sufficient to support the agency's decision, from remanding for consideration of additional evidence" in the administrative mandamus proceeding. (Id . at p. 532, 128 Cal.Rptr.3d 658, 257 P.3d 81.) It concluded that "when a court has properly remanded for agency reconsideration on grounds that all, or part, of the original administrative decision has insufficient support in the record developed before the agency, the statute does not preclude the agency from accepting and considering additional evidence to fill the gap the court has identified." (Id . at p. 526, 128 Cal.Rptr.3d 658, 257 P.3d 81.)

In Highway 68 Coalition v. County of Monterey (2017) 14 Cal.App.5th 883, 222 Cal.Rptr.3d 423, this court "determine[d] that the issue of whether a proposed project is consistent with a county's general plan is not a CEQA issue, and therefore the mandate procedures provided for CEQA violations at section 21168.9 [did] not apply." (Id . at p. 893, 222 Cal.Rptr.3d 423.) This court recognized that "an agency's decisions regarding general plan consistency are reviewed by ordinary mandamus." (Id . at p. 894, 222 Cal.Rptr.3d 423.) Based on Voices , this court then rejected a claim that "the trial court was not authorized to utilize the interlocutory remand procedure" with respect to "a discrete, non-CEQA issue of general plan consistency." (Id . at p. 895, 222 Cal.Rptr.3d 423.) In this case, we have no occasion to reconsider whether an interlocutory remand is an appropriate order in a non-CEQA traditional mandate proceeding.

"In a CEQA case, as in other mandamus cases, [appellate] review of the administrative record for error is the same as the trial court's; we review the agency's action, not the trial court's decision. [Citations.]" (Muzzy Ranch Co. v. Solano County Airport Land Use Com. (2007) 41 Cal.4th 372, 381, 60 Cal.Rptr.3d 247, 160 P.3d 116.) "[J]udicial review of agency decisions under CEQA is governed by sections 21168 (administrative mandamus) and 21168.5 (traditional mandamus)." (Laurel Heights Improvement Assn. v. Regents of University of California (1993) 6 Cal.4th 1112, 1135, 26 Cal.Rptr.2d 231, 864 P.2d 502, italics omitted; see Laurel Heights Improvement Assn. v. Regents of University of California (1988) 47 Cal.3d 376, 392, fn. 5, 253 Cal.Rptr. 426, 764 P.2d 278.)

It is possible that this peremptory writ requirement precludes interlocutory remands. (See Muzzy Ranch Co. v. Solano County Airport Land Use Com. (2007) 41 Cal.4th 372, 381, 60 Cal.Rptr.3d 247, 160 P.3d 116 [courts "must bear in mind that '[t]he foremost principle under CEQA is that the Legislature intended the act "to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language." ' [Citation.]"; see also Lewis v. Superior Court (1999) 19 Cal.4th 1232, 1265, 82 Cal.Rptr.2d 85, 970 P.2d 872 (conc. opn. of Baxter, J.) ["The legislative authorization for issuance of a peremptory writ in the first instance reflects recognition that, on occasion, immediate judicial action is necessary to prevent or correct unauthorized or erroneous action by the respondent or to compel the respondent to act when required to do so."].)

The court's grant of a peremptory writ applied only to ACCORD's CEQA claim regarding noise impacts and not to its other CEQA claims or its non-CEQA claims.

See footnote *, ante .